## GILMORE v O'SULLIVAN

Docket No. 48017. Submitted December 10, 1980, at Detroit.—Decided
    April 14, 1981. Leave to appeal applied for.

James R. Gilmore, Jr., by his next friend Lynn Gilmore, Lynn
    Gilmore individually and James R. Gilmore, Sr., brought an
    action for damages for medical malpractice against John O'Sul-
    livan, M.D., an obstetrician-gynecologist, and the University of
    Michigan Medical Center. The allegations concerned the prena-
    tal care and delivery of James R. Gilmore, Jr., and an alleged
    breach of contract by Dr. O'Sullivan in his failure to perform a
    Caesarean section delivery. The Washtenaw Circuit Court,
    Henry D. Arkison, J., in a consolidated trial, conducted a jury
    trial in the action against Dr. O'Sullivan and sat as the trier of
    fact in the Court of Claims action against the medical center.
    At the close of plaintiffs' proofs, the court directed a verdict of
    no cause of action in favor of Dr. O'Sullivan and granted
    summary judgment in favor of the medical center. Plaintiffs
    appeal, alleging that the trial court abused its discretion by
    refusing to allow testimony by the plaintiffs' proffered expert
    witness, that the trial court erred in dismissing their claim
    based on breach of contract, and that the governmental immu-
    nity statute should be interpreted to give the circuit court
    jurisdiction over the claim against the medical center. *Held:*

    1. The trial court did not abuse its discretion in finding that

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 30, 148.

61 Am Jur 2d (Rev), Phusicians, Surgeons, and Other Healers § 358.

Competence of physician or surgeon from one locality to testify as
    to standard of care required of defendant practicing in another
    locality. 37 ALR3d 953.

[2]61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers
    §§ 201, 205, 226.

Standard of skill and care required of specialist. 21 ALR3d 953.

[3] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

81 Am Jur 2d, Witnesses §§ 138, 139.

[4] 73 Am Jur 2d, Statute of Frauds § 285 *et seq.*

[5] 73 Am Jur 2d, Statute of Frauds § 3 *et seq.*

[6] [No Reference].

the proffered witness did not possess the requisite background and qualifications to testify as to the proper standard of care, that being a national standard equal to that of a specialist practicing in the field of obstetrics and gynecology.

2. The plaintiffs presented documents purporting to prove a contract to deliver the child by Caesarean section. The trial court found the documents insufficient to overcome the statute of frauds. Review of the documents reveals that while the parties contemplated a Caesarean section delivery, Dr. O'Sullivan did not obligate himself to perform such a procedure, and it cannot be said that there was a contract. The trial court's holding was correct.

3. The cases relied upon by the plaintiffs do not alter the exclusive jurisdiction of the Court of Claims over claims against state agencies.

Affirmed.

1. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE.

The proper test for an expert witness in a medical malpractice case is whether the witness is familiar with the standard of care to be applied.

2. PHYSICIANS AND SURGEONS — STANDARD OF CARE — OBSTETRICIANS-GYNECOLOGISTS.

The standard of care to be applied to an obstetrician-gynecologist is a national one equal to that of a specialist practicing in the field of obstetrics and gynecology.

3. WITNESSES — EXPERT WITNESSES — QUALIFICATIONS OF WITNESSES.

It is within the discretion of the trial court to determine whether a witness is sufficiently qualified to provide opinion testimony as an expert witness, and absent a finding of abuse of that discretion the trial court's determination will not be reversed.

4. FRAUDS, STATUTE OF — SUFFICIENCY OF WRITING.

A writing, to satisfy the statute of frauds, must contain all of the essential terms of the contract with the degree of certainty which would obviate any necessity for parol evidence; normally, a memorandum is sufficient if the obligations of each party may be determined from it.

5. FRAUDS, STATUTE OF — PHYSICIANS AND SURGEONS — AGREEMENT TO DELIVER CHILD — STATUTES.

An agreement to deliver a baby by Caesarean section is an agreement relating to medical care or treatment within the

meaning of the statute of frauds provision covering such agreements (MCL 566.132; MSA 26.922).

6. COURTS — COURT OF CLAIMS — JURISDICTION.

A claim for medical malpractice against the University of Michigan Medical Center is within the exclusive jurisdiction of the Court of Claims.

*Gerald Tuchow Law Offices* (by *Stephen J. Trahey),* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *D. J. Watters* and *Raymond W. Morganti),* for defendant O'Sullivan.

*Moll, Desenberg, Bayer & Behrendt,* for defendant University of Michigan Medical Center.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and M. J. KELLY, JJ.

PER CURIAM. Plaintiffs appeal as of right a decision of the trial court, which directed a verdict of no cause of action as to defendant Dr. John O'Sullivan, GCR 1963, 515.1, and granted defendant University of Michigan Medical center's motion for summary judgment. GCR 1963, 117.2(3). The plaintiffs raise four issues, which we hold do not require reversal.

Plaintiffs brought an action for damages against defendants based on allegations of medical malpractice. The action against defendant University of Michigan Medical Center was properly dismissed by the circuit court and brought in the Court of Claims. The two cases were consolidated and heard in the Washtenaw County Circuit Court, with a jury sitting in the case against defendant O'Sullivan and the judge sitting as trier of fact in the Court of Claims case. At the close of plaintiffs' proofs, the judge directed a verdict of no

cause of action in favor of Dr. O'Sullivan and granted summary judgment of no cause of action for defendant UMMC.

The allegations of malpractice concern departures from the proper standard of care in the prenatal care and delivery of the infant son. Plaintiffs also alleged the breach of a contract under which defendant O'Sullivan allegedly agreed to perform a Caesarean section delivery. The contract claim was dismissed for failure to satisfy the statute of frauds, MCL 566.132(g); MSA 26.922(g), and plaintiffs proceeded to trial on the malpractice claims.

As part of their case in chief, plaintiffs sought to introduce the testimony of Dr. George Miller concerning the standard of care applicable to defendant O'Sullivan, an obstetrician-gynecologist. Dr. Miller testified that he was familiar with the practice and standard of care of specialists in obstetrics and gynecology and his qualifications were examined by the trial court. The court found that he was not qualified by education, practical experience or research and reading sufficient to testify concerning the applicable standard of care.

I

Plaintiffs first claim that the trial court abused its discretion in refusing to allow testimony by the proffered expert witness. Both parties agree that the proper test for an expert witness in a medical malpractice trial is whether the witness is familiar with the standard of care to be applied. *Francisco v Parchment Medical Clinic, PC,* 407 Mich 325, 327; 285 NW2d 39 (1979), *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976). The standard to be applied in this case is a national one equal to

that of a specialist practicing in the field of obstetrics and gynecology. *Francisco, supra.*

Whether a witness is sufficiently qualified to provide opinion testimony is a decision committed to the discretion of the trial court. *Groth v De-Grandchamp,* 71 Mich App 439, 443; 248 NW2d 576 (1976), *Auto-Ion Chemicals, Inc v Gates Rubber Co,* 33 Mich App 574, 577; 190 NW2d 357 (1971). In the absence of a finding of abused discretion, the trial court's determination will not be reversed. *Patelczyk v Olson,* 95 Mich App 281; 289 NW2d 910 (1980).

Before holding Dr. Miller to be unqualified, the trial court examined the witness with respect to his knowledge, skill, experience, training and education and appeared to consider all as factors in reaching its conclusion. In its written opinion, the lower court noted four factors bearing on Dr. Miller's lack of expertise in the area of obstetrics and gynecology, including (1) a lack of board certification in obstetrics, (2) the absence of evidence on the number or type of maternity cases he handled, (3) that he had not performed surgery since 1967 or delivered a baby since 1959, and (4) a lack of research or study in the field of obstetrics and gynecology. In light of these deficiencies in Dr. Miller's background and qualifications, we conclude that the trial court properly exercised its discretion by ruling Dr. Miller's testimony inadmissible.

The plaintiffs next assert that the trial court erred in refusing to admit Dr. Miller's testimony as it related to claims based on treatment allegedly outside the field of obstetrics and gynecology. However, we note that all of the plaintiff's allegations supporting their malpractice claim relate to the prenatal treatment and delivery procedures

employed by defendant O'Sullivan. We thus hold it was not an abuse of discretion to rule inadmissible the testimony of Dr. Miller.

## II

The plaintiffs next allege reversible error in the trial court's dismissal of their claim for damages based upon the breach of an alleged contract to deliver the plaintiff's child by Caesarean section. The court first granted the defendants' motions for accelerated judgment under GCR 1963, 116.1(5), when it found no evidence to meet the "in writing" requirement of the statute of frauds, as applied to agreements for medical care. MCL 566.132(g); MSA 26.922(g). In a subsequent proceeding, a second judge denied the plaintiffs' motion to amend the pleadings by reinstating the contract claim. In so holding, the court found four documents offered by the plaintiffs as proof of the contract's existence insufficient to overcome the bar of the statute of frauds. This statutory provision, expanding the statute of frauds to agreements for medical care, has not yet been the subject of an appellate decision. Its constitutionality was not attacked below so we have no foundation for finding it suspect constitutionally. However, as applied to other agreements, it has been held that "a writing must contain all of the essential terms of the contract with the degree of certainty which would obviate any necessity for parol evidence". *Ass'n of Hebrew Teachers v Jewish Welfare Federation,* 62 Mich App 54, 59; 233 NW2d 184 (1975), citing *Commercial Factors Corp v Zephyr Awning Corp,* 353 Mich 251, 256-259; 91 NW2d 511, 514-515 (1958). In *Fothergill v McKay Press,* 361 Mich 666, 675-676; 106 NW2d 215 (1960), the Supreme Court described the requisite

sufficiency necessary for a memorandum to satisfy the statute of frauds as applied to employment contracts:

"Why was this instrument not a sufficient memorandum to answer the requirement of the statute? Appellee argues, in part, that it 'was not a memorandum but rather represented a proposed contract between the parties, complete in all respects.' This circumstance, if true, would only add to its strength as a memorandum, not detract therefrom. *Normally a memorandum need be only that. It is sufficient if the obligations of each party may be determined from it. It need not have the minutiae of a contract.* Mr. Justice Cardozo refers to it as a 'token,' and so, indeed, it is. But it is no less a token because it purports to be more." (Emphasis added, footnote omitted.)

Under the above sufficiency standards, the documents presented to satisfy the statute of frauds must, at a minimum, display defendant O'Sullivan's promise or agreement to perform a Caesarean section birth. Review of the disputed documents does not reveal any language by which defendant O'Sullivan bound himself to deliver the plaintiffs' child by Caesarean section only. The first writing offered was an undated obstetrical record of patient Lynn Gilmore labelled "St. Joseph's Mercy Hospital". Under the heading "Impression and Outlook" is stated "Repeat C/S". The second writing is dated November 27, 1975, and states, "Plan: If goes into labor today let deliver from below. If not—C/S—11-28-75". The third writing is a consent to operation form employed by defendant UMMC and signed by another physician. Paragraph 2 of this form states that the procedures required to treat the patient's condition have been explained and is followed by the written statement "repeat C/S—delivery of infant

through incision in the uterus". However, the next paragraph permits alternative remedies in response to "unforeseen conditions." The fourth writing is dated December 12, 1975, and states, "talked to Mrs. Gilmore this a.m.—Since she didn't have repeat C/S they have decided that her husband will have vas". "Vas" refers to vasectomy.

The documents are consistent with plaintiffs' claim that the parties contemplated a Caesarean section delivery. This interpretation is also supported by the deposition testimony of Dr. O'Sullivan, which consistently referred to a "plan" to deliver by Caesarean section. At no time, however, did Dr. O'Sullivan obligate himself to perform such a procedure. Absent Dr. O'Sullivan's acknowledged assumption of an enforceable obligation to perform the requested operation, it cannot be said that there was a contract. We are impelled to this conclusion in spite of a definite conviction that Mr. and Mrs. Gilmore, under all the facts and circumstances revealed in this record, had a reasonable expectation of a Caesarean section delivery. The language of the statute, MCL 566.132; MSA 26.922, states as follows:

"In the following cases an agreement, contract or promise shall be void, unless that agreement, contract, or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:

* * *

"(g) An agreement, promise, contract, or warranty of cure relating to medical care or treatment."

We conclude that an agreement to deliver a baby by Caesarean section is an agreement relating to medical care or treatment within the above statute. We find the evidence insufficient to satisfy the written requirements of the amended Michigan statute of frauds.

III

The plaintiffs' final contention is that the governmental immunity statute, MCL 691.1407; MSA 3.996(107), under which the liability of defendant UMMC was claimed, should be interpreted to place jurisdiction over the claim against UMMC in the Washtenaw County Circuit Court. The plaintiffs rely principally upon *Genesee County Road Comm v State Highway Comm,* 86 Mich App 294, 297; 272 NW2d 632 (1978) ("the power of the Court of Claims is limited in part by the doctrine of governmental immunity"), and *Doan v Kellogg Community College,* 80 Mich App 316, 320; 263 NW2d 357 (1977) ("The Court of Claims act should be interpreted in light of the governmental immunity act"), as support for their position. However, we find these cases do not alter the exclusive jurisdiction vested in the Court of Claims over claims against state agencies. MCL 600.6419; MSA 27A.6419. Our reading of *Genesee County Road Comm* discloses that the limitations imposed by the doctrine of governmental immunity operated only to restrict the Court of Claims power to render a judgment against an immune state agency. The Court did not discuss the scope of the Court of Claims jurisdiction to hear claims against state agencies. In *Doan,* the Court merely held that the exclusive jurisdiction of the Court of Claims did not extend to local community colleges.

We also find inapplicable the Supreme Court recent decision in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), cited by the plaintiffs as further support for their claim. The *Parker* Court did not address the jurisdiction of the Court of Claims. We find the plaintiffs' claim without merit.

Affirmed.