CRODA v SARNACKI

Docket No. 43276. Submitted January 14, 1981, at Detroit.—Decided
     May 5, 1981. Leave to appeal applied for.

Josepha P. Croda and Antonio Croda brought a medical malprac-
     tice action in Wayne Circuit Court against Carl J. Sarnacki,
     M.D., Graciano F. Singson, M.D., South Macomb Gynecologists,
     P.C., Theodore G. Pantos, M.D., and Detroit-Macomb Hospitals
     Association, jointly and severally. During the first week of trial,
     defendant Detroit-Macomb Hospitals Association settled with
     plaintiff for $4,000. The jury returned a verdict of no cause of
     action as to the remaining defendants and judgment was en-
     tered accordingly, William L. Cahalan, J. Plaintiffs appeal,
     raising the following issues: (1) plaintiffs contend that the trial
     court erred by restricting the cross-examination of Dr. Pantos
     after he had been asked by plaintiffs' counsel whether he
     agreed with statements in the deposition of defendants' expert
     witness, Dr. Urwiller. Defendants objected to the questioning
     and the trial court ruled that, because Dr. Urwiller's deposition
     had not been admitted into evidence and he had not been
     called as a witness, plaintiffs' attorney could not specifically
     refer to the deposition. The court also ruled that plaintiffs'
     counsel could not inquire as to why Dr. Urwiller had not been
     called as a witness. Plaintiffs' counsel was allowed, however, to
     ask Dr. Pantos his frame of reference in forming his opinion
     that Mrs. Croda had not suffered permanent kidney damage as
     a result of treatment by defendants and as to the applicable
     standard of care; (2) plaintiffs allege that the trial court erred
     in giving a jury instruction which informed the jury of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 629-632.
[3, 5, 6] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26-28, 30, 31.
     Necessity and sufficiency of showing of medical witness' familiarity
     with particular medical or surgical technique involved in suit. 46
     ALR3d 275.
     Competency of general practitioner to testify as expert witness in
     action against specialist for medical malpractice. 31 ALR3d 1163.
[4] 75 Am Jur 2d, Trial §§ 30, 87.
[6] 75 Am Jur 2d, Trial §§ 668, 691.

amount of the settlement between plaintiffs and Detroit-Macomb Hospitals Association and told the jurors that they must deduct that amount from any judgment rendered against the remaining defendants. Plaintiffs argue that the giving of the instruction violated the rule of evidence which makes evidence of compromises or offers to compromise inadmissible at trial and that the trial court should have deducted the $4,000 from whatever judgment the jury may have reached rather than advising the jury to make the deduction themselves. They claim that telling the jury of the $4,000 settlement allowed the jury to speculate that plaintiffs' claims were without merit; (3) plaintiffs challenge an instruction on the apportionment of damages among the defendants; and (4) plaintiffs contend that the inclusion of the word "learned" in a jury instruction used in connection with explaining the requisite qualifications necessary for an expert witness would have misled the jury into concluding that, contrary to established law, the expert must be a specialist in the specific fields at issue in order to be a competent witness. *Held:*

1. A record of plaintiffs' attempt to impeach Dr. Pantos fails to show any contradiction between Dr. Urwiller's deposition and Dr. Pantos' testimony. Therefore, the deposition was not relevant as impeachment evidence, there being no significant difference between the opinions of the two doctors. There was no error in the court's ruling as it did.

2. The fact that plaintiffs had reached a settlement with Detroit-Macomb Hospitals Association was not introduced into evidence in order to prove the liability of the remaining defendants and the rule relied on by plaintiffs does not require exclusion when the evidence is offered for another purpose. Furthermore, the information pertaining to the settlement was not admitted into evidence at all. Even if it had been, admission of proof of a prior settlement agreement is a matter of judicial discretion. In view of the fact that the hospital association was an active party during the initial days of trial, the court's instruction was proper in order to inform the jury of the party's dismissal from the suit. The trial court's instruction was the only noted mention of the settlement to the jury. There is no reason to assume that, based upon this instruction, the jury concluded that plaintiffs' claims were without merit. There was no abuse of discretion in the trial court's ruling.

3. The trial court substantially charged the jury with the standard jury instructions on apportionment. Based upon the evidence presented, there was no error in the charge.

4. An expert witness must possess the necessary learning,

knowledge, skill or practical experience that would enable him to competently testify concerning the subject at issue. The trial court told the jurors that they could not determine the standard of care on their own knowledge, but that the proper practice would have to be established by one "learned in urology or gynecology". Viewing the instructions as a whole, there was no reversible error.

Affirmed.

BRONSON, P.J., dissented from the majority opinion on two points. First, he would hold that the trial court committed reversible error in giving the jury instruction which informed the jury of the earlier settlement and the amount thereof because a substantial possibility existed that the jury would misuse the information concerning the settlement and conclude that plaintiffs' claims were of dubious validity given the relatively low amount for which the claim against the hospital was settled. Secondly, he would hold that the jury instruction pertaining to the qualifications of an expert witness was incomplete and erroneous and would lead the average juror to conclude that the plaintiffs' expert witness's testimony should be given less weight because he was not a specialist in urology and gynecology and that it was highly probable that the jury's verdict was improperly affected by the instruction. He would reverse and remand for a new trial.

### OPINION OF THE COURT

1. EVIDENCE — SETTLEMENT AGREEMENTS — ADMISSIBILITY OF AGREE-
    MENTS — DISCRETION.

    Admission of proof of a prior settlement agreement between a defendant and the plaintiff is a matter of judicial discretion.

2. DAMAGES — EVIDENCE — SETTLEMENTS — ADMISSIBILITY — JURY.

    A trial court in a medical malpractice action against multiple defendants did not abuse its discretion by instructing the jury that the plaintiffs had settled with one defendant for $4,000 and that the jury should deduct that amount from any judgment rendered against the remaining defendants where the instruction was proper in order to inform the jury of the settling party's dismissal from the suit, the instruction was the only mention of the settlement to the jury, and there was no reason to assume that, based upon the instruction, the jury concluded that the plaintiffs' claims were without merit.

3. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE —
    QUALIFICATIONS OF WITNESS.

    An expert witness in a trial for medical malpractice need not be

a board-certified specialist in a particular field in order to testify as to the standard of care applicable to that practice but he must possess the necessary learning, knowledge, skill or practical experience that would enable him to competently testify concerning that area of medicine.

DISSENT BY BRONSON, P.J.

4. TRIAL — DISCRETION — FAILURE TO RECOGNIZE OR EXERCISE DISCRETION — ERROR.

It is error for a trial court, where it has the discretion to rule on a matter, to fail to recognize that it has such discretion and, therefore, to fail or to refuse to exercise it.

5. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE — STANDARD OF CARE.

A witness need not be of the same school or speciality as the defendant in order to be a qualified medical expert in a medical malpractice case; it is sufficient if the witness has expertise in the standard of care imposed by the defendant's school or speciality.

6. TRIAL — JURY — JURY INSTRUCTIONS — EXPERT WITNESSES — ERROR.

It was error for a trial court to give a jury instruction on the requisite qualifications for an expert witness where the court stated that an expert witness must be "learned" in a particular field or speciality because the jurors could have construed the instruction to mean that a particular witness must be a specialist in that field or speciality, the instruction could lead the average juror to conclude that that witness's testimony should be given less weight because he was not a specialist in that particular field where a very specific objection to the instruction was made, and the trial court, which easily could have rectified the matter, did not.

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman*), for plaintiffs.

*Kerr, Russell & Weber* (by *James R. Dashiell*), for defendants Sarnacki, Singson and South Macomb Gynecologists, P.C.

*Sullivan, Ranger, Ward & Bone, P.C.,* for defendant Pantos.

Before: BRONSON, P.J., and J. H. GILLIS and BASHARA, JJ.

BASHARA, J. Plaintiffs sought recovery of damages incurred as the result of defendants' alleged medical malpractice. During the first week of trial, defendant Detroit-Macomb Hospitals Association settled with plaintiffs. Subsequently, the jury returned a verdict of no cause of action as to the remaining defendants. Plantiffs now appeal the jury's verdict.

Drs. Sarnacki and Singson practiced medicine together as South Macomb Gynecologists, P.C., also a named defendant in the action. On June 8, 1973, plaintiff Josepha Croda consulted with Dr. Sarnacki concerning problems which included a dropped uterus, a herniated rectum, a lacerated cervix, excessive bleeding, pain on intercourse, constipation, and urinary incontinence. Sarnacki informed plaintiff that she needed a hysterectomy and a cystocele-rectocele. She underwent the surgery in the South Macomb Hospital on July 30, 1973. Subsequent to the surgery, plaintiff's bladder did not maintain its proper tone. As a result, catheterization was necessary to evacuate urine from the bladder. Two days after her discharge from the hospital, plaintiff went to the office of South Macomb Gynecologists and Dr. Singson removed the catheter. When Mrs. Croda began to notice urine in her vagina, Sarnacki reinserted a catheter and referred her to defendant Dr. Theodore Pantos, a urologist, who treated her from August 21, 1973, to November 2, 1973. As part of his treatment, Dr. Pantos performed a right ne-

phrostomy on September 11, 1973, and a reimplantation of the right ureter on November 9, 1973.

Plaintiff alleged that she sustained permanent injuries to her urinary system and right kidney as a result of defendants' negligence. She averred that she had not been properly informed of the dangers inherent in the surgical procedure of July 30, 1973, and that Dr. Sarnacki had breached a contract to cure. Mrs. Croda further contended that Sarnacki departed from the standard of care in cutting her right ureter during surgery and by discharging her from the hospital prematurely. Plaintiff further averred that Dr. Pantos was negligent in failing to perform the right nephrostomy before September 11, 1973, when he knew that plaintiff had problems with her right kidney on September 4, 1973. Mrs. Croda also alleged that the delay resulted in further damage to her right kidney. She also claimed that, instead of a nephrostomy, Dr. Pantos should have performed a reimplantation of the right ureter on September 11, 1973. Plaintiff Antonio Croda's claim was based on loss of consortium.

Plaintiffs initially contend that the trial court erred in restricting the cross-examination of Dr. Pantos. Plaintiffs' counsel began to ask Dr. Pantos whether he agreed with statements in the deposition of defendants' expert witness, Dr. Urwiller.

Upon objection by defendants, the trial court ruled that, since the deposition of Dr. Urwiller had not been admitted into evidence and he had not been called as a witness, plaintiffs' attorney could not specifically refer to the deposition. It was further held that plaintiffs' counsel could not inquire as to why Dr. Urwiller had not been called as a witness. Plaintiffs' counsel was allowed, however, to ask Dr. Pantos his frame of reference in

forming his opinion that Mrs. Croda had not suffered permanent kidney damage and the standard of care.

A separate record was made in which plaintiffs attempted to impeach Dr. Pantos. Plaintiffs failed to show any contradiction between Dr. Urwiller's deposition and Dr. Pantos' testimony. Therefore, the deposition was not relevant as impeachment evidence, there being no significant difference between the opinions of the two doctors.[1] We find no abuse of discretion in the court's ruling. *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600, 615; 300 NW2d 335 (1980), *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977).

Plaintiffs allege error in the following jury instruction:

"Now there was an additional defendant in this trial which was South Macomb Hospital *[sic]* Association and as you recall I instructed you that South Macomb Hospital *[sic]* Association after a particular point in this trial would no longer be considered a defendant. South Macomb Hospital *[sic]* Association has settled the claim filed against it by the plaintiffs for the amount of four thousand dollars. If you determine to award Mr. and Mrs. Croda any additional money from the remaining defendants, you should first deduct the sum of four thousand dollars from any sum you feel the plaintiffs should receive as damage."

Plaintiffs argue that the instruction violated MRE 408, which states:

"Rule 408 Compromise and Offers to Compromise.

---

[1] Consequently, we need not address plaintiffs' novel suggestion that the deposition of one doctor may be introduced into evidence solely for the purpose of impeaching another doctor's testimony. See MRE 707, *People v Brown,* 13 Mich App 222; 163 NW2d 829 (1968).

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, *is not admissible to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. *This rule also does not require exclusion when the evidence is offered for another purpose,* such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." (Emphasis added.)

We find MRE 408 inapplicable to the controversy at bar. The settlement was not introduced into evidence in order to prove the liability of the remaining defendants. In fact, it was not admitted into evidence at all.

Plaintiffs assert for the first time on appeal that the trial court should have deducted the $4,000 from whatever judgment the jury may have reached rather than advise them to make the deduction themselves. By telling the jury that plaintiffs recovered $4,000 from the hospital, they contend the jury was allowed to speculate that their claim was without merit.

Admission of proof of a prior settlement agreement between a defendant and the plaintiff is a matter of judicial discretion. *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 97; 284 NW2d 126 (1979), *lv to appeal held in abeyance* 409 Mich 868 (1980), *Reno v Heineman,* 56 Mich App 509, 512; 224 NW2d 687 (1974). But see, *Brewer v Payless Stations, Inc,* 94 Mich App 281; 288 NW2d

352 (1979), *lv gtd* 409 Mich 871 (1980).[2] Until the
Supreme Court holds to the contrary, we agree
with the conclusion in *Wilson, supra,* that plain-
tiffs' proposal raised only on appeal is a permissi-
ble alternative which the trial court is not re-
quired to follow. *Wilson, supra,* 98.

In view of the fact that the hospital association
was an active party during the initial days of trial,
the court's instruction was proper in order to
inform the jury of the party's dismissal from the
suit. The trial court's instruction was the only
noted mention of the settlement to the jury. There
is no reason to assume that, based upon this
instruction, the jury concluded that plaintiffs'
claims were without merit. We fail to find an
abuse of discretion in the trial court's ruling.

The third instruction challenged on appeal con-
cerns the apportionment of damages among the
defendants. The trial court substantially charged
the jury with the standard jury instructions on
apportionment, SJI 41.04 and SJI 41.05. Based
upon the evidence presented, we find no error in
the charge. *Naccarato v Grob,* 384 Mich 248, 255-
256; 180 NW2d 788 (1970).

Plaintiffs challenge one final jury instruction:

"Now, the question is, 'How do you as jurors deter-
mine what the standard of practice is and whether or
not it has been observed by the defendants in this case?'

"Jurors and judges do not know and are not permit-
ted arbitrarily to say what are the proper methods of

---

[2] An interlocutory appeal was granted in *Brewer,* where this Court
reversed the judge's pretrial ruling that evidence of the settlement of
one defendant would go to the jury in order that it could deduct the
amount from any judgment rendered. One issue under consideration
by the Supreme Court in *Brewer* is "whether the jury hearing the
plaintiff's case against one or more tortfeasors may be informed of a
settlement between plaintiff and another tortfeasor responsible for
the same injuries where the settlement does not directly relate to an
issue of material fact in the case". 409 Mich 871 (1980).

treating a patient under the circumstances in this case. This is a medical question. What is or is not a proper practice by a urologist or a gynecologist, the treatment of a patient or what is or is not standard of practice of the usual practice in the community is a question for experts and can be established only by their testimony. That is, it is only those learned in urology or gynecology who can say what should have been done or what was done or not to have been done and it is only those learned in urology or gynecology who can say what was done was proper."

Plaintiffs contend that the phrase "learned in urology or gynecology" could have misled the jury into concluding that, contrary to established law, the expert must be a specialist in those fields in order to be a competent witness. We agree with plaintiffs' initial premise that an expert need not be a board-certified specialist in the field in order to testify as to the standard of care of that practice. However, it is well-established that the expert witness must possess the necessary learning, knowledge, skill or practical experience that would enable him to competently testify concerning that area of medicine. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976).

It is therefore clear that plaintiffs' expert, Dr. Miller, was not required to be a gynecologist or urologist in order to qualify as an expert witness. He stated that he was learned in those areas due to his medical training, experience and continuing review of the literature in those fields. The trial court properly allowed Dr. Miller to testify as an expert witness. MRE 702, *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 805; 286 NW2d 34 (1979), MCL 600.2912a; MSA 27A.2912(1).

However, plaintiffs argue that by giving the above instruction, Dr. Miller's credibility was diminished by the court. They read the instruction

as requiring the expert to be an actual member of one of the named specialties, a greater qualification then established by law.

We disagree with plaintiffs' interpretation of the instruction. The trial court told the jurors that they could not determine the standard of care on their own knowledge. Rather, the proper practice may only be established by one "learned in urology or gynecology". We find the instruction to conform precisely to the requirements of *Siirila, supra.*

Viewing the instructions as a whole, we find no reversible error. *Moore v Foster,* 96 Mich App 317, 321; 292 NW2d 535 (1980).

Affirmed. Costs to defendants.

J. H. GILLIS, J., concurred.

BRONSON, P.J. *(dissenting).* I have two major areas of disagreement with the majority's opinion in this case. I therefore dissent.

I

I disagree with most aspects of the majority's analysis on the question of whether the trial court erred in instructing the jury to deduct $4,000 from any judgment which it might render in plaintiffs' favor. Preliminarily, contrary to the majority view, only an extremely technical reading of the transcript can lead one to conclude that plaintiffs assert this issue for the first time on appeal. While most of the discussion at trial was concerned with the propriety of telling the jury about the $4,000 settlement with the South Macomb Hospital when no evidence has been introduced during trial concerning the same, it is patently clear that plaintiffs' counsel desired that the trial court make a

postverdict adjustment if the jury found in his
clients' favor. Indeed, the trial court noted that
Wayne County Circuit Court Judge Baum had
done the postjudgment arithmetic calculations
himself in a prior case. The judge here stated,
however, that there was no case law supporting
this approach and specifically said, "I can't find
any authority for the position". Plaintiffs' counsel
immediately rejoined, "My authority for the posi-
tion is * * *", clearly indicating that he had no
objection to the trial court making any postjudg-
ment calculations himself. All the arguments on
this issue were manifestly premised on which
approach was proper—submitting the settlement
figure to the jury or having the trial judge do the
calculations himself.

While the majority prefers the approach used in
*Wilson v W A Foote Memorial Hospital,* 91 Mich
App 90, 96-97; 284 NW2d 126 (1979), *lv to appeal
held in abeyance* 409 Mich 868 (1980), allowing the
jury to know about the previous settlement, I
believe that the reasoning employed in *Brewer v
Payless Stations, Inc,* 94 Mich App 281; 288 NW2d
352 (1979), *lv gtd* 409 Mich 871 (1980), is far more
persuasive. I agree with the majority that, stand-
ing by itself, MRE 408 is not applicable to this
controversy. The jury was informed of the settle-
ment for reasons other than proving the validity
or invalidity of the claim. At the same time, a
substantial possibility existed, as expressed by
plaintiffs' attorney, that the jury would misuse the
information concerning the settlement and con-
clude that plaintiffs' claim was of dubious validity
given the relatively low amount for which the case
against the hospital was settled. Since plaintiffs'
counsel was willing to allow the trial court to
make any necessary postverdict adjustments to a

favorable judgment rendered, the fact of the settlement was immaterial and inadmissible. MRE 402. Assuming, *arguendo,* that counsel's willingness to allow the trial judge to make the postverdict adjustments should not be deemed sufficient to remove the prior settlement as material to a fact in issue, I still believe that under these circumstances MRE 403 would preclude the admission of the amount of the settlement. The jury's knowledge of the low settlement figure was extremely prejudicial and clearly outweighed any probative value it had, given that counsel was prepared to allow the trial court to make the necessary adjustments. Furthermore, I am convinced that defense counsel was primarily interested in having the settlement amount come before the jury precisely because of the prejudical impact it would have.[1] The trial court believed it was compelled to give the instruction since requested by defense counsel. At one point during the arguments, the court suggested that defense counsel might want to withdraw the request for the instruction. The defense attorney, however, was adamant about the jury being informed of the settlement figure.

It is clear that the trial court did not recognize its discretion to refuse the instruction. It is equally apparent that had it been aware of its discretion to reject the instruction, it would have done so. The following pertinent excerpts from the trial court's comments on this issue unequivocally establish both facts:

"*The Court:* First I guess with respect to reference to

---

[1] It is clear that any verdict in plaintiffs' favor would have been lessened by the $4,000 even if the jury was not told of the settlement figure. Thus, I am unable to see any reason, other than the tactical one mentioned, for defense counsel's insistence that the instruction be given.

the verdict, the settlement between Mr. Vander Male and Mr. Lopatin, South Macomb Hospital, I can't find any authority to support Mr. Lopatin's proposition that under Michigan law that I am not required under Michigan law to bring that settlement to the jury. I understand your position on it as far as in terms of money being in evidence.

"Michigan differs from maybe every state in the union but my understanding, and you can check me, the most recent cases I could find which I had done research on is in that that matter must be brought to the jury's attention and they must do the arithmetic rather than me.

"The last person—I haven't talked with Judge Baum. The last person who tried this in Wayne Circuit, to do the arithmetic themselves was Judge Baum and even he, I am quite sure—I can't find any authority for the position.

\*   \*   \*

"*The Court:* You may well be right. As I read the cases, I am bound to tell them that they must subtract from the verdict the amount of settlement. As I say if I were sitting in the Supreme Court which I am obviously not, I would not have signed my name to such an opinion of such a rule.

\*   \*   \*

"*The Court:* It's a matter now. It has no probative value with respect to liability. It is a matter of—Michigan law is an anomaly. If I were sitting in the Supreme Court, I wouldn't have adopted such a procedure. I think the judge should do the arithmetic but that is not the way the Supreme Court has ruled. They have ruled that the jury must do the arithmetic and therefore the jury must be instructed from any verdict which it renders it must subtract $4,000.00."

*Wilson, surpa,* relied on by the majority, specifically refers to questions concerning the admission of a settlement with a joint tortfeasor as being a matter within the trial court's discretion. Here, the trial judge did not recognize his discretion so

that his ruling cannot be seriously characterized
as an exercise of the same. In *People v Jackson,*
391 Mich 323, 332; 217 NW2d 22 (1974), the Su-
preme Court indicated that the failure of a trial
judge to recognize his discretion is a basis for
reversal. This rule has also been applied in civil
cases. *The Cleveland-Cliffs Iron Co v First State
Ins Co,* 105 Mich App 487; 307 NW2d 78 (1981).

Finally, as concerns this issue, plaintiffs' argu-
ment below that the jury should not be informed
of the $4,000 settlement because the fact of settle-
ment was never introduced into evidence is well
taken. The two cases relied upon by the majority,
*Wilson, supra,* and *Reno v Heineman,* 56 Mich
App 509; 224 NW2d 687 (1974), both arose in the
context of evidentiary rulings made by the trial
court. In the instant case, the defense never at-
tempted to admit evidence of the settlement. The
jury had not been apprised of the settlement prior
to the close of the proofs by either side. MRE 408
does not require exclusion of a settlement when
the evidence of the settlement is offered for an-
other legitimate purpose. Here, the evidence was
simply not offered. The defendants' failure to in-
troduce the fact and amount of settlement in their
case in chief deprived plaintiffs of any opportunity
to present testimony under oath which might tend
to minimize the obvious prejudicial impact of the
low settlement figure.[2]

---

[2] The majority states, "There is no reason to assume that, based
upon this instruction, the jury concluded plaintiffs' claims were
without merit." In my opinion this statement imposes upon the
litigant an affirmative obligation to actually prove the error harmful.
Of course, this is almost always an impossibility. There is no reason
to assume in this case that the jury *did not* conclude plaintiffs' claims
were without merit based upon this instruction. Longstanding case
law provides that if the error committed was on motion of the
opposition, as here, the opposition must establish that the complain-
ing party was not prejudiced by the error. *Campau v Traub,* 27 Mich
215, 216 (1873). Additionally, ancient and venerable case law provides

The error in the instant case cannot be deemed harmless. The relatively low amount of the settlement may well have convinced jurors that plaintiffs' claim was frivolous.

## II

I also disagree with the majority's conclusion concerning the likely effects of the following instruction:

"Now, the question is, 'How do you as jurors determine what the standard of practice is and whether or not it has been observed by the defendants in this case?'

"Jurors and judges do not know and are not permitted arbitrarily to say what are the proper methods of treating a patient under the circumstances in this case. This is a medical question. What is or is not a proper practice by a urologist or a gynecologist, the treatment of a patient or what is or is not standard of practice of the usual practice in the community is a question for experts and can be established only by their testimony. That is, it is only those learned in urology or gynecology who can say what should have been done or what was done or not to have been done and it is only those learned in urology or gynecology who can say what was done was proper."

Plaintiffs' counsel objected to the instruction as follows:

"* * * I object to the Court's [c]harge that you have

that where there has been instructional error, unless it is clear that appellant could not have prevailed in any case, the error cannot be deemed harmless. *Toledo & A A R Co v Johnson,* 49 Mich 148, 150; 13 NW 492 (1882). Additionally, *Wilson, supra,* which the majority relies on, forthrightly acknowledges the potential for prejudice in admitting evidence of a prior settlement. In *Wilson,* the settlement amount was $150,000, $75,000 as to each of two settling defendants. Clearly, if a potential for prejudice was apparent in *Wilson,* it is hard to rebut that the $4,000 settlement here likely did substantial mischief.

to have someone learned in urology or gynecology in order to testify as to the—as to what should or should not have been done. I think the test is if a person is a medical doctor or even an osteopathic doctor who is familiar with the standard of care that is the test to be applied and not that he has to be aware of the specialty of both urology and gynecology."

Plaintiffs contend that the phrase "learned in urology or gynecology" suggests that the expert had to be a specialist in both of these fields to be considered competent to testify on the appropriate standard of care. Defendants argue that the instruction was correct and that expert testimony on the standard of care requires "more than mere knowledge of a speciality".

To be a qualified medical expert, the witness need not necessarily be of the same school or specialty as the defendant. It is sufficient if the witness has expertise in the standard of care imposed by the defendant's school or specialty. *Siirila v Barrios,* 398 Mich 576, 590-594; 248 NW2d 171 (1976), *Wilson, supra,* 101-102.

Dr. George Miller, plaintiffs' expert, testified that he is not board certified in urology or gynecology. However, he was board certified in surgery and stated that he kept up on the medical literature in obstetrics, gynecology, and urology. Miller testified that he also attended general surgical conferences covering these topics. Finally, he testified that he was familiar with the standard of care as it pertained to specialists in obstetrics, urology, and gynecology, practicing in Detroit, for patients who have problems like those of plaintiff. As regards Dr. Miller's status as a medical expert, this case is similar to *Wilson, supra.* There, this Court rejected the assertion that plaintiffs' expert need be an expert in obstetrics to give an opinion on the

emergency nature of a breech presentation. The *Wilson* Court noted that the situation in question was not totally limited to the field of obstetrics. The same is also true in the instant case, where Dr. Miller's certification as a surgeon necessarily required him to keep up on the relevant standard of care for surgical procedures of many varieties.

The question here, however, is not whether Miller was properly qualified to give expert testimony, but whether the trial court's instructions would lead the average juror to conclude that his testimony should be given less weight because he was not a specialist in urology and gynecology. I believe that the instruction as given was improper. Although "learned" arguably could be interpreted simply as requiring knowledge of urology or gynecology, which Miller had, the jurors could also have construed the instruction to mean that the witness must be a specialist in those fields.[3]

Unlike the majority, I think the instruction was imcomplete and erroneous. This is particularly true in light of plaintiffs' counsel's very specific objection to the charge and the ease with which the trial court could have rectified the same.

In the instant case, I cannot say that the error was harmless. Defense counsel's cross-examination of Dr. Miller constituted a strong attack on his qualifications and credibility. While this attack was proper and within permissible bounds, in combination with the erroneous instruction, the possibility that the jury associated "learned in gynecology and urology" as the equivalent of requiring specialization in these fields was greatly

─────

[3] The instruction would have been proper had the trial court also charged: "Learned in urology or gynecology does not mean that the witness must be a specialist in these fields. It is sufficient if the witness is familiar with the requisite standard of care by training, education or experience."

enhanced. On balance, I am persuaded that it is highly probable that the jury's verdict was improperly affected by the instruction.

I would reverse and remand for a new trial.