## HAISENLEDER v REEDER

Docket No. 53225. Submitted December 9, 1981, at Detroit.—Decided
    March 17, 1982. Leave to appeal applied for.

Kenneth C. Haisenleder and Colleen M. Haisenleder, co-adminis-
    trators of the estate of John P. Haisenleder, deceased, brought
    an action against St. Clair Shores police officers Donald W.
    Reeder and Edward Stack alleging assault and battery, false
    imprisonment, negligence and defamation, and against Edward
    Berg, D.O. and Harrison Community Hospital, Inc., alleging
    negligence. Colleen M. Haisenleder also brought a separate
    action against the same defendants seeking damages for emo-
    tional distress. The actions arose out of an incident in which
    the decedent, who was in need of medical assistance, was bound
    to a stretcher and taken by the police officers to Harrison
    Community Hospital, over the protests of Mrs. Haisenleder who
    had arranged with her family physician to take him to another
    hospital. At Harrison, the decedent was initially treated by Dr.
    Berg. The following day he went into a coma and was trans-
    ferred to another hospital, where he died. The cases were
    consolidated for trial and, prior to trial, the plaintiffs settled
    with Harrison Community Hospital. The Macomb Circuit
    Court, Raymond R. Cashen, J., directed a verdict in favor of the
    police officers on the claim of false imprisonment, and the jury
    rendered verdicts of no cause of action in favor of the officers
    on the other claims. The court also granted directed verdicts in
    favor of Dr. Berg. Plaintiffs appeal. *Held:*

  1. The trial court erred in concluding that a prospective
    expert witness could not testify because he was incapable of
    establishing the applicable standard of care for an emergency

REFERENCES FOR POINTS IN HEADNOTES

[1] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 329.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 16.
[3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26, 27.
    61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 352.
[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 353.
[5] 47 Am Jur 2d, Jury § 200.
[6] 57 Am Jur 2d, Negligence §§ 8, 76.
[7] 47 Am Jur 2d, Jury §§ 195, 305.

roon physician. The record indicates that the proffered witness in fact could have established the requisite standard of care.

2. The trial court's refusal to excuse two prospective jurors for cause was not an abuse of discretion.

3. The trial court's jury instructions regarding the standard of care applicable to the police officers was not erroneous.

Reversed and remanded for a new trial as to defendant Dr. Berg. Affirmed as to defendants Reeder and Stack.

R. M. Maher, J., would hold that the trial court's failure to excuse one of the prospective jurors was an abuse of discretion. He would reverse and remand for a new trial against the police officers as well as Dr. Berg except on the claim of false imprisonment against the officers.

## Opinion of the Court

1. Negligence — Medical Malpractice — Standard of Care — Burden of Proof.

   A plaintiff in a medical malpractice action has the burden of proving the standard of care applicable to the defendant by the use of expert testimony.

2. Witnesses — Expert Witnesses.

   A trial court has discretion in the admission of expert testimony and its decision will not be reversed absent an abuse of that discretion.

3. Witnesses — Expert Witnesses — Court Rules.

   A witness may be qualified as an expert by knowledge, skill, experience, training or education and, in the case of a medical witness, medical training, experience, and continuing review of literature may be sufficient to qualify a person as an expert witness (MRE 702).

4. Negligence — Medical Malpractice — Witnesses — Expert Witnesses.

   A member of one medical school of thought may testify as to the standard of care applicable to members of another school of thought if the witness is familiar with the applicable standard of care; a specialist may testify as to the standard of care of a general practitioner.

5. Jury — Voir Dire — Abuse of Discretion.

   A trial court has broad discretion in voir dire examination and its decision as to the impartiality of a prospective juror will be reversed only if there is a clear abuse of discretion.

6. Negligence — Jury Instructions — Police Officers.

A jury instruction that the alleged negligence of a police officer is to be compared to conduct which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances is not erroneous.

Partial Concurrence and Partial Dissent by R. M. Maher, J.

7. Jury — Challenge for Cause — Abuse of Discretion.

*A trial court's failure to excuse a prospective juror for cause was an abuse of discretion where the record of the voir dire reveals that the juror showed a state of mind which would prevent her from rendering a just verdict, had opinions or conscientious scruples which would have improperly influenced her verdict, and was interested in a question like the issue to be tried.*

*Valenti, Winiemko & Bolger,* for plaintiffs.

*Dennis R. Nettle,* for defendants Reeder and Stack.

*Sullivan, Ward & Bone,* for defendant Berg.

Before: D. C. Riley, P.J., and R. M. Maher and Cynar, JJ.

Cynar, J. Plaintiffs appeal as of right from judgments of no cause of action entered in favor of all defendants.

Plaintiffs' 16-year-old decedent, John Haisenleder, became ill on December 29, 1972, with flu-like symptoms. John's mother, plaintiff Colleen Haisenleder, contacted the family physician, Dr. James Fisher, the next day. Dr. Fisher prescribed medication which Mrs. Haisenleder administered. Later that evening John's condition worsened. He vomited frequently, was disoriented and aggressive and glassy-eyed. Mrs. Haisenleder call Dr. Fisher who told her to bring John to St. John's Hospital immediately. Dr. Fisher made arrangements with

the emergency room to accept John. He also consulted another doctor and they tentatively diagnosed Reyes Syndrome.

Mrs. Haisenleder was unable to get John into the car by herself and called the St. Clair Shores police department for assistance. Defendant police officers Reeder and Stack arrived along with two firemen. Mrs. Haisenleder told them that John needed to be taken to St. John's Hospital. The police officers went into John's bedroom and Mrs. Haisenleder heard John scream. One of the officers asked her if John had taken any drugs and she said no, only the prescription medicine.

The officers bound John to a stretcher and informed Mrs. Haisenleder that they were taking him to Harrison Community Hospital. She told them again that Dr. Fisher was waiting for him at St. John's but the officers said St. John's Hospital would not admit him because he was violent and stated that Harrison treated drug addicts.

When they arrived at Harrison, John was examined in the emergency room by defendant Dr. Berg. Dr. Berg could not obtain a medical history from John but Mrs. Haisenleder told him that John's condition worsened after being administered the prescription medication. Dr. Berg asked what drugs John had taken and she told him none, other than the prescription. She also told him that Dr. Fisher had instructed that John be taken to St. John's.

Dr. Berg diagnosed "possible drug overdose, rule out meningitis". He had a series of tests done and then contacted Dr. Pesta. Dr. Pesta admitted John to the hospital and then performed a spinal tap. The results were negative and he informed Mrs. Haisenleder that John was resting. John went into a coma the next day and was transferred to Mt.

Clemens General Hospital where he died, possibly
from Reyes Syndrome.

Plaintiffs commenced two lawsuits. One was filed
against defendants Reeder and Stack, alleging as-
sault and battery, false imprisonment, negligence
and defamation. The suit also alleged negligence
against Dr. Berg and Harrison Community Hospi-
tal. The other suit was filed separately by Mrs.
Haisenleder seeking damages for emotional dis-
tress. The cases were consolidated for trial. Plain-
tiffs settled with Harrison Community Hospital
prior to trial.

The trial court directed a verdict in favor of
Reeder and Stack on the false imprisonment claim
and the jury rendered a verdict of no cause of
action against them on the remaining claims. The
court granted Dr. Berg's motion for a directed
verdict.

On appeal, plaintiffs allege several errors, one of
which requires reversal as to defendant Dr. Berg.
None of the other issues are sufficient to warrant
reversal, and only brief comment will be made as
to those.

Plaintiffs offered Dr. Baublis as an expert wit-
ness. He had an extensive professional background
since receiving his M.D. in 1956, primarily involv-
ing pediatrics, epidemiology and communicable
diseases. He had written several articles and
served as a consultant. Dr. Baublis had experience
as an emergency room physician between 1956 and
1959, during his residency. He also presently
served as a consultant to emergency room physi-
cians. He was familiar with Reyes Syndrome.

After establishing the above qualifications, coun-
sel asked whether the doctor had "an opinion on
what a reasonably, careful [emergency] room phy-
sician would do or not do under the same or

similar circumstances of this case of John Haisenleder". Dr. Baublis replied that he had an opinion. Defendant objected on the basis of lack of foundation since the opinion was based upon depositions of Mrs. Haisenleder and Dr. Berg and a review of the Harrison Hospital records.

An extensive discussion then ensued. The court told plaintiffs' counsel that he must first establish that the doctor was familiar with the standard of care applicable to this case before questioning what a reasonably careful person would do under the circumstances.

On a separate record, the doctor testified that he knew the standard of care for a reasonably careful emergency room physician under similar circumstances and that it would apply to an osteopathic physician such as Dr. Berg. The foundation for that knowledge was his belief that emergency rooms were to provide health services to critical patients, whether provided by an osteopath or medical physician, from contact with osteopathic physicians in emergency rooms requesting opinions and from contact with individuals taking emergency care courses.

The court believed that the doctor was speaking from "the golden tower". He was not "a troop in the trench". In sum, the court felt that the doctor was extremely competent in his area but did not have the requisite knowledge to establish a standard that existed in emergency rooms. The court subsequently granted defendant Dr. Berg's motion for a directed verdict on the basis that no expert had established that a standard existed and was violated.

Plaintiffs had the burden of proving the standard of care with the aid of expert testimony. *Wood v Posthuma,* 108 Mich App 226; 310 NW2d

341 (1981). The trial court has discretion in admitting expert testimony and its decision will not be reversed absent a clear abuse, *Wood, supra, Hughes v Allis-Chalmers Corp,* 96 Mich App 175; 292 NW2d 514 (1980).

In the present case, the court concluded that Dr. Baublis could not base his knowledge of the applicable standard of care upon hearsay information from contact with other physicians. This conclusion was erroneous.

A witness may be qualified as an expert "by knowledge, skill, experience, training, or education". MRE 702. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976). Medical training, experience and continuing review of literature may be sufficient, *Croda v Sarnacki,* 106 Mich App 51, 60; 307 NW2d 728 (1981).

A member of one medical school of thought may testify as to the standard of care applicable to members of another school of thought if the witness is familiar with the applicable standards of care, *Siirila, supra,* 591. A specialist may testify as to the standard of care for a general practitioner. As stated in *Siirila:*

> "The rule therefore as to the ability of a specialist testifying as to a general practitioner's compliance with the requisite standard of care of a general practitioner is only that the witness have knowledge of the standard of care about which he or she is testifying. The standard of care discussed must of course be that of a general practitioner. * * * The weight to be given such testimony is, of course, a matter for the jury." *Siirila, supra,* 593.

Finally, the geographical area of practice is not determinative; only whether the proposed expert

knew what the practice was. *Callahan v William Beaumont Hospital,* 400 Mich 177; 254 NW2d 31 (1977). See also *LeBlanc v Lentini,* 82 Mich App 5; 266 NW2d 643 (1978).

Applying these rules to the present case leads us to conclude that the trial court erred in refusing the testimony of the proffered witness. Unlike the proposed expert witnesses in *Siirila, supra,* and *Callahan, supra,* Dr. Baublis testified that he knew the standard of care for an emergency room physician. He also stated that the standard would apply to an osteopathic physician. The foundation for Dr. Baublis's knowledge was his experience in emergency rooms, although several years ago, and frequent contact with emergency room osteopathic physicians requesting consultation. Merely because Dr. Baublis was a specialist and not a "troop in the trench" does not render him unqualified as long as he knows the applicable standard of care. The weight of his opinion is for the jury to decide.

Unlike in *Gilmore v O'Sullivan,* 106 Mich App 35; 307 NW2d 695 (1981), advanced by defendant, the trial court in the present case did not find total deficiencies in education and experience. Rather, the court seemed to require that the doctor have personal emergency room experience. As the cases above indicate, a specialist can testify to a lower standard of care if he knows what that standard is. Dr. Baublis had a foundation for his knowledge and knew what the applicable standard of care was. The trial court should have accepted him as a witness and allowed inquiry as to what the standard was and whether it was violated. We note, however, that counsel should clearly elicit that the expert knows the standard and what the standard was before questioning as to what that standard would have required. We therefore re-

verse the trial court's grant of directed verdicts in favor of Dr. Berg in both cases.

In view of the above decision we need not address plaintiffs' issue concerning the other proffered expert witnesses.

Plaintiffs also allege that the trial court abused its discretion in failing to excuse two jurors for cause. Regarding juror Collins, the court finally elicited that he would be impartial and we find no abuse of discretion. Regarding juror Kerr, however, a much closer question is presented. She was a nurse and knew one of Dr. Berg's proposed witnesses. The proposed witness was on the staff at the hospital where juror Kerr worked. Additionally, she was to testify as the main witness on behalf of that hospital in an upcoming malpractice action.

GCR 1963, 511.4 sets forth the grounds for challenges for cause. A trial court has broad discretion in voir dire examination and the decision as to impartiality will be reversed only if there is a clear abuse of discretion. *McNabb v Green Real Estate Co,* 62 Mich App 500, 505-506; 233 NW2d 811 (1975).

In the present case, the court conducted an extensive voir dire of the juror before denying the challenge for cause. We conclude that, while a close question exists under these facts, there was no reversible error. We note, however, that trial courts may be well-advised to grant a request to excuse for cause in such close cases in order to prevent potential reversal.

As to defendants Reeder and Stack, we affirm. The restraint of John Haisenleder under the circumstances was not unlawful false imprisonment. The jury instruction, that the alleged negligence of the officers was to be compared to conduct which a

reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances, was not erroneous. See *Jenkins v Starkey,* 95 Mich App 685, 691-692; 291 NW2d 170 (1980).

The judgments as to defendant Dr. Berg are reversed and the cases remanded for a new trial. The judgments as to defendants Reeder and Stack are affirmed.

D. C. RILEY, P.J., concurred.

R. M. MAHER, J. *(concurring in part, dissenting in part).* I cannot agree with the majority's treatment of the trial court's failure to excuse juror Kerr. Kerr, a nurse, knew a proposed defense witness and was to be a hospital's principal defense witness in an upcoming malpractice action. Most significantly, however, the trial court's "extensive voir dire" of juror Kerr revealed not that Kerr believed herself capable of deciding the case in an impartial manner but, rather, that she had preconceived notions which cast considerable doubt on her ability to remain impartial. Juror Kerr's testimony showed that she would find it very difficult to return a verdict against the defendant physician unless she was convinced that he had *deliberately* inflicted harm upon plaintiffs.

In the course of the voir dire, in response to a question from defense counsel, Kerr indicated that she would find it difficult to return a verdict against defendant Dr. Berg:

"It might bother me in this respect, that I have reputable people that honestly tried. As this point I would question whether or not it was done deliberately."

Kerr never said that she considered herself capable of making a fair and impartial decision, but only that she would "honestly try" to do so. Clearly, Kerr was less than confident of her ability to set aside her personal views on malpractice, conceding only that she *would hope* [she] could judge [the evidence] impartially and fairly". (Emphasis supplied.)

GCR 1963, 511.4 provides in part:

"4. Challenges for Cause. After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. Every challenge for cause shall be determined by the court. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. The following are grounds for challenges for cause:

\* \* \*

"(3) that the person is biased for or against a party or attorney;

"(4) that the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be;

"(5) that the person has opinions or conscientious scruples which would improperly influence his verdict;

\* \* \*

"(13) that the person is interested in a question like the issue to be tried."

A careful review of the record reveals that Kerr (1) showed a state of mind which would prevent her from rendering a just verdict; (2) had opinions or conscientious scruples which would have improperly influenced her verdict; and (3) was interested in a question like the issue to be tried. The trial court was well aware that it was on shaky ground in denying plaintiff's challenge for cause:

"I don't think I can excuse her for cause. I really don't. I think it is about as tight a question as you can come to. I don't think I can say that the woman is disqualified for cause."

I am convinced that the trial court's failure to excuse juror Kerr constituted an abuse of discretion. The majority warns trial courts to excuse such jurors in order to avoid reversal, and then, in the same breath, concludes that the trial court's failure to do so does not mandate reversal.

I would reverse and remand for a new trial against all defendants except the police officers on the false imprisonment claim (however, I would order a new trial against the police officers on the other claims). I concur in the majority's analysis of the remaining issues.