SWANEK v HUTZEL HOSPITAL

Docket No. 48917. Submitted November 4, 1981, at Detroit.—Decided March 8, 1982.

James and Catherine Swanek individually and Catherine Swanek, as next friend of Benjamin Swanek, brought a medical malpractice action against Hutzel Hospital, Dr. William B. Anderson and Dr. Mario A. Petrini in Wayne Circuit Court, Myron H. Wahls, J., alleging that Benjamin Swanek suffered permanent brain damage and retardation as a result of defendants' negligence in allowing Benjamin to be deprived of oxygen during the process of birth. The jury returned a verdict of no cause of action in favor of all the defendants. Plaintiffs appealed and, during the pendency of the appeal, Hutzel Hospital settled the claim against it and was dismissed from the action. The appeal continued with respect to defendants Anderson and Petrini. *Held:*

1. The trial court did not abuse its discretion in ruling that Dr. Berke was not qualified to testify to the standard of care of an obstetrician-gynecologist in 1972, at which time the witness had not completed his residency training. The plaintiffs failed to establish that Dr. Berke possessed the necessary learning, knowledge, skill, or practical experience in the field of obstetrics and gynecology to testify competently.

2. Plaintiffs' expert witness who was a pediatric neurologist

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26, 105.

61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 200 *et seq.*, 354.

Necessity and sufficiency of showing of medical witness' familiarity with particular medical or surgical technique involved in suit. 46 ALR3d 275.

[3] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 205.

Physicians and surgeons: standard of skill and case required of specialist. 21 ALR3d 953.

[4] 31 Am Jur 2d, Expert and Opinion Evidence § 31.

[5] 31 Am Jur 2d, Expert and Opinion Evidence § 43.

Admissibility of opinion of medical expert as affected by his having heard the person give the history of his case. 51 ALR2d 1051.

was not erroneously precluded from testifying concerning areas within his expertise. The objections to his testimony were properly sustained because the questions were either posed in an improper form or exceeded the scope of the witness's expertise as a pediatric neurologist by inquiring into the standard of care for an obstetrician-gynecologist.

3. It was not error for the trial court to admit into evidence a doctor's report in the form of two letters by Dr. Menkes which had been made part of plaintiffs' answers to interrogatories or to allow the report to be used in the examination of other doctors-witnesses.

4. The trial court did not err in instructing the jury on malpractice when it stated the standard of care to be what other specialists would have done rather than what other specialists should have done, as requested by plaintiffs. The instruction was proper as given.

5. There is no merit to plaintiffs' argument that defendants should be required to defray the costs of the transcript for unnecessarily opposing plaintiffs' motion to submit the case on a proposed concise statement of facts and issues.

Affirmed.

1. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE.

The proper test for determining whether a person is qualified to testify as an expert witness in a medical malpractice trial is whether the witness is familiar with the appropriate standard of care.

2. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE.

An expert witness in a medical malpractice trial must possess the necessary learning, knowledge, and skill or practical experience that would enable him to competently testify concerning the appropriate area of medicine.

3. PHYSICIANS AND SURGEONS — NEGLIGENCE — MEDICAL SPECIALTIES — STANDARD OF CARE.

The standard of care of practice to which a medical specialist is held is that of a reasonable specialist practicing medicine in the light of present-day scientific knowledge.

4. WITNESSES — OPINION TESTIMONY.

The determination of whether a witness is sufficiently qualified to give opinion testimony is left to the discretion of the trial judge, whose decision will not be reversed absent an abuse of discretion.

5. Witnesses — Expert Witnesses — Opinion Testimony — Hearsay — Rules of Evidence.

  An expert witness may testify to an opinion based on hearsay information (MRE 703, 705).

*Rosenbaum, Bloom, Appel & Moses* (by *Leslie D. Bloom)*, for plaintiffs.

*Kerr, Russell & Weber* (by *C. Kenneth Perry, Jr.)*, for defendants.

Before: J. H. Gillis, P.J., and Beasley and P. E. Deegan,* JJ.

Per Curiam. This cause of action arises from the alleged medical malpractice of Hutzel Hospital and Drs. William Anderson and Mario Patrini, obstetricians-gynecologists. Following trial, the jury returned a verdict of no cause of action in favor of all the defendants. The claim against Hutzel Hospital was settled during the pendency of this appeal and the hospital was dismissed by order of this Court on July 22, 1980. Plaintiffs appeal as of right.

Defendant doctors treated Mrs. Swanek from the inception of her pregnancy with her first child, Benjamin, who suffers permanent brain damage and retardation.

Plaintiffs claim that Benjamin's condition resulted from defendant's negligence in allowing Benjamin to be deprived of oxygen during the process of birth. Plaintiffs maintain that defendants' negligence in monitoring the fetal heart tones as reflected by the hospital chart allowed Benjamin's distress to go undetected and forestalled other emergency procedures.

The first issue raised on appeal is whether the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

trial court abused its discretion in ruling that Dr. Berke was not qualified to testify to the standard of care of an obstetrician-gynecologist in 1972, at which time the witness had not completed his residency training.

The proper test for an expert witness in a medical malpractice trial is whether the witness is familiar with the appropriate standard of care. *Francisco v Parchment Medical Clinic, PC,* 407 Mich 325, 327; 285 NW2d 39 (1979). The expert witness must possess the necessary learning, knowledge, and skill or practical experience that would enable him to competently testify concerning that area of medicine. *Siirila v Barrios,* 398 Mich 576, 591; 248 NW2d 171 (1976), *Croda v Sarnacki,* 106 Mich App 51, 60; 307 NW2d 728 (1981).

The standard of care for a specialist is that of a reasonable specialist practicing medicine in the light of present-day scientific knowledge. *Naccarato v Grob,* 384 Mich 248, 253; 180 NW2d 788 (1970). The standard to be applied in the instant case is a national one equal to that of a specialist practicing in the field of obstetrics and gynecology. *Francisco v Parchment Clinic, supra, Gilmore v O'Sullivan,* 106 Mich App 35, 38-39; 307 NW2d 695 (1981).

It is left to the discretion of the trial judge to determine whether a witness is sufficiently qualified to give opinion testimony. *Gilmore v O'Sullivan, supra, Groth v DeGrandchamp,* 71 Mich App 439, 443; 248 NW2d 576 (1976), *lv den* 400 Mich 808 (1977), and it is axiomatic that the trial court's exercise of discretion will not be reversed absent an abuse of discretion. *Patelczyk v Olson,* 95 Mich App 281; 289 NW2d 910 (1980).

A review of the testimony in the instant case

leads us to conclude that the ruling that Dr. Berke was not qualified to testify as an expert witness was not an abuse of the trial judge's discretion. The trial judge did not refuse to qualify Dr. Berke as an expert witness simply because he was only a medical resident at the time of Benjamin Swanek's birth, but because, as the trial record bears out, the plaintiffs failed to establish that Dr. Berke possessed the necessary learning, knowledge, skill, or practical experience in the field of obstetrics and gynecology to competently testify. See 11 Michigan Law & Practice, Evidence, § 260, p 484, *Moore v Lederle Laboratories,* 392 Mich 289, 295-296; 220 NW2d 400 (1974).

We note that Dr. Berke was not certified for practice in obstetrics and gynecology at the time of Benjamin's birth in 1972, at a time when the standard of care within this specialty field was undergoing rapid change and when Dr. Berke admittedly was still learning his specialty, and that the nature and extent of his experience in obstetrics and gynecology and the extent of his participation in the practice and procedures of the birth process were not established at trial. The trial record simply does not support a finding that the plaintiffs, by competent evidence, established for the trial judge that Dr. Berke was knowledgeable as to the necessary standard of care in 1972. Also vacant from the record is evidence that Dr. Berke had had experience or training with respect to electronic fetal monitoring and emergency procedures related thereto upon which plaintiffs based their cause of action. *Cf. Gilmore v O'Sullivan, supra,* wherein this Court affirmed the lower court in refusing to allow a doctor to testify on matters relating to the area of obstetrics and gynecology because the lower court found that the doctor was not qualified by education, practical experience, or

research and reading sufficient to testify concerning the applicable standard of care.

Because Dr. Berke's qualifications as an expert were not established at trial, the trial judge properly exercised his discretion in refusing to allow Dr. Berke to testify in that capacity.

The second issue raised on appeal is whether plaintiffs' expert witness who was a pediatric neurologist was erroneously precluded from testifying concerning areas within his expertise. We conclude, after a review of the alleged errors and the witness's testimony, that each of the questions to which objections were initially sustained was ultimately answered. Furthermore, the objections were properly sustained because the questions were either posed in an improper form or exceeded the scope of the witness's expertise as a pediatric neurologist by inquiring into the standard of care for an obstetrician-gynecologist.

The next issue raised on appeal is whether MRE 703 and 705 permit a doctor's report, in the form of two letters by Dr. Menkes and made part of plaintiffs' answers to interrogatories, to be used in the examination of other doctors-witnesses and to be admitted into evidence.

MRE 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence."

MRE 705 provides:

"The expert may testify in terms of opinion or infer-

ence and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

This Court has determined that, under the Michigan Rules of Evidence, an expert witness may testify to an opinion based on hearsay information. *Dayhuff v General Motors Corp,* 103 Mich App 177, 184-185; 303 NW2d 179 (1981), *Tiffany v Christman Co,* 93 Mich App 267, 279-280; 287 NW2d 199 (1979). Thus, the doctors-witnesses were free to give an opinion based upon information conveyed through the Menkes letters. MRE 703 indicates that it was proper to ask the doctors-witnesses' opinions based on the facts of the letters even if such facts were not revealed to them until the time of trial. MRE 705 establishes that the use of the letters was properly disclosed on cross-examination.

Under MRE 703, it was left to the discretion of the trial judge to admit into evidence the letters containing the underlying facts upon which the expert opinion was based. In light of this Court's holdings in *Dayhuff* and *Tiffany* and the fact that both expert witnesses relied on the Menkes letters in forming their opinions, the references to these letters at trial and their admission into evidence were not erroneous.

Plaintiffs' fourth issue on appeal is whether the trial judge erred in instructing the jury on malpractice when he stated the standard of care to be what other specialists "would have done", rather than what other specialists "should have done" as requested by plaintiffs.

We find no error in the instruction as given by the trial judge. The instruction conforms with

SJI2d 30.01 on Professional Negligence and/or Malpractice:

"When I use the words 'professional negligence' or 'malpractice' with respect to the defendant's conduct, I mean the failure to do something which a [Name profession.] of ordinary learning, judgment, or skill in [this community or a similar one/Name particular specialty.] would do, or the doing of something which a [Name profession.] of ordinary learning, judgment or skill would not do, under the same or similar circumstances you find to exist in this case.

"It is for you to decide, based upon the evidence, what the ordinary [Name profession.] of ordinary learning, judgment or skill would do or would not do under the same or similar circumstances."

Furthermore, the language of the instruction is supported by case law. See SJI2d 30.01, p 4-5.

We fail to find any unique circumstances present in the instant case requiring a deviation from the standard instruction. We reject plaintiffs' contention that defendants were allowed to escape liability by reason of having set up their own lower standard for the recording of the monitoring of the newborn patient. The instruction was proper as given.

Plaintiffs' final contention is that defendant should be required to defray the costs of the transcripts for unnecessarily opposing plaintiffs' motion to submit the case on a proposed concise statement of facts and issues.

First, we find it difficult to understand why an attorney who did not conduct the trial would prefer to conduct an appeal without benefit of the transcript; second, this Court found it necessary to frequently consult the transcripts in addressing

the issues brought on appeal; and, finally, considering the selectivity plaintiffs exercised in presenting testimony to establish error, it would have been a virtual impossibility to fairly assess the arguments without benefit of the complete transcripts. Consequently, there is no merit in plaintiffs' argument.

The jury verdict finding no cause of action as to defendant doctors is affirmed.