THOMAS v McPHERSON COMMUNITY HEALTH CENTER

Docket No. 81614. Submitted November 5, 1985, at Lansing. Decided August 21, 1986.

Louella Thomas and Billie Thomas filed a medical malpractice action against McPherson Community Health Center, Byron Road Medical Group, and Drs. E. S. Woodworth and R. V. Stuber in Livingston Circuit Court. At the close of plaintiffs' proofs, the court, Bert M. Hensick, J., granted a directed verdict in favor of the McPherson Community Health Center. A judgment of no cause of action against the remaining defendants was rendered by the jury. Plaintiffs' motion for a new trial was denied. Plaintiffs appealed.

The Court of Appeals *held:*

1. A directed verdict in favor of the health center was proper. Plaintiffs failed to present expert opinion testimony that the health center breached the appropriate standard of care and that that breach caused the injury at issue. Jury consideration of the health center's liability therefore would have been the subject of speculation or conjecture.

2. The "ordinary negligence" exception to the requirement of expert testimony does not apply to the facts of this case.

3. Plaintiffs failed to satisfy the elements of the doctrine of res ipsa loquitur. Negligence on the part of the health center therefore cannot be inferred.

4. Plaintiffs' argument that the trial court's directed verdict in favor of the health center denied them a fair trial in that they then had to prove that full responsibility for Louella Thomas' injury was that of the physicians is without merit.

5. The testimony of defendants' expert witness regarding the

REFERENCES

Am Jur 2d, Appeal and Error §§ 700, 880, 881.
Am Jur 2d, Expert and Opinion Evidence §§ 42, 146-148, 474 et seq.
Am Jur 2d, Physicians and Surgeons §§ 205 et seq., 226.
Am Jur 2d, Trial §§ 469 et seq., 483-485.
See the annotations in the Index to Annotations under Malpractice by Medical or Health Professions; Appeal and Error.

standard of care applicable to the defendant physicians was properly admitted.

6. Defendants' expert witness was properly allowed to offer opinion testimony based upon pathological reports.

7. The trial court did not err in admitting testimony of defendants' expert witness even though that testimony may have been speculative. The court's reasoning that the testimony would be helpful to the jury in determining causation is reasonable.

8. Plaintiffs' claim that the trial court erred in refusing to give four requested jury instructions has been abandoned on appeal since no authority for plaintiffs' argument has been cited. Furthermore, the requested instructions were properly refused as they either dealt with matters not properly an issue at trial or were inapplicable, an incomplete statement of law, or moot.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

A trial court in ruling on a motion for a directed verdict must accord the nonmoving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party; if the evidence, when viewed in such a manner, establishes a prima facie case, the motion must be denied.

2. NEGLIGENCE — HOSPITALS — MALPRACTICE — EVIDENCE — EXPERT TESTIMONY.

Issues of negligence and causation in medical malpractice cases are normally beyond the ken of laymen; thus, in actions for malpractice against hospitals, expert testimony is required to establish the applicable standard of conduct, the breach of that standard, and causation unless (1) the negligence claimed is a matter of common knowledge and observation or (2) the negligence can be inferred by the satisfaction of the elements of the doctrine of res ipsa loquitur.

3. NEGLIGENCE — MALPRACTICE — HOSPITALS — PHYSICIANS AND SURGEONS.

The disposition of one claim, where separate acts of negligence are asserted on the part of a hospital and an independent physician, does not govern disposition of the other claim.

4. NEGLIGENCE — MALPRACTICE — OBSTETRICS AND GYNECOLOGY — STANDARD OF CARE.

The standard of care for a specialist in the field of obstetrics and gynecology is a national one.

5. EVIDENCE — EXPERT WITNESSES — HEARSAY — RULES OF EVIDENCE.
   An expert witness may, under certain circumstances, testify to an opinion based on hearsay information (MRE 703, 705).

6. EVIDENCE — RELEVANCY — APPEAL.
   The relevance and admissibility of evidence is within the sound discretion of the trial court and will not be disturbed on appeal unless a clear abuse has been shown.

7. APPEAL — CITATION OF AUTHORITY.
   A party may not leave it to the Court of Appeals to search for authority to sustain or reject its position.

*Michael J. Gallagher,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Robert G. Kamenec*), for McPherson Community Health Center.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*), for Byron Road Medical Group, P.C., Dr. E. S. Woodworth and Dr. R. V. Stuber.

Before: D. F. WALSH, P.J., and MACKENZIE, and R. R. FERGUSON,* JJ.

PER CURIAM. This is a medical malpractice action. On February 26, 1979, defendants Dr. E. S. Woodworth and Dr. R. V. Stuber performed a tubal ligation on plaintiff Louella Thomas. Although the procedure was performed at defendant McPherson Community Health Center (health center or center), it is undisputed that defendant physicians are not agents of the center. Two weeks after the tubal ligation was performed, a perforation of Mrs. Thomas' small bowel was discovered, causing extensive peritonitis and necessitating the removal of approximately twelve inches of the bowel. A second surgery was required several days later to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

drain the infected pelvic area. On March 20, 1980, plaintiffs filed suit against the defendant physicians, Byron Road Medical Group, and McPherson Community Health Center. Jury trial commenced on April 24, 1984. At the close of plaintiffs' proofs, the trial court granted a directed verdict in favor of the health center. A judgment in favor of the remaining defendants was entered pursuant to a jury verdict of no cause of action. The trial court subsequently denied plaintiffs' motion for a new trial. Plaintiffs now appeal as of right. We affirm.

Plaintiffs' expert, Dr. Kalman Gold, testified by deposition upon his review of defendants' records that the perforation of Mrs. Thomas' bowel occurred during the tubal ligation procedure when the bowel was burned, either by direct contact with the cauterizer used in the procedure or by a defect in the cauterization machine which caused a spark to jump. He saw no evidence in the medical records as to what specific error in fact caused the perforation, however. Plaintiffs also presented the deposition testimony of defendant physician Woodworth. He stated that all normal precautions had been taken to insure that no tissues other than Mrs. Thomas' fallopian tubes were contacted by the cauterizer and that the cauterization machinery, owned by the health center, worked properly. Although Dr. Woodworth felt that there was a cause-and-effect relationship between the tubal ligation and the perforated bowel, neither he nor defendant physician Stuber, whose deposition testimony was also presented by plaintiffs, could specify the cause of the perforation.

Defendants' expert, Dr. Alvin Siegler, testified by video deposition that he found no breach of the normal standard of care in the tubal ligation procedure used by Woodworth and Stuber. He posed three explanations for Mrs. Thomas' perfo-

rated bowel: (1) an infectious process related to the tubal ligation; (2) direct trauma to the bowel; and (3) thermal trauma to the bowel. He thought the first to be the most likely possibility, through an abscess at the operative site which adhered to the bowel and eventually caused perforation. Siegler found no evidence of a thermal or burn-related injury in the pathology report he reviewed, but conceded that he was not cognizant of a pathologist's ability to find such evidence under the circumstances.

Plaintiffs first contend that the trial court erred in granting a directed verdict in favor of the health center on the ground that there was no evidence of the center's negligence. Plaintiffs advanced three theories of liability against the health center. Two related to the furnishing of a defective cauterizer and the third to improper grounding of the cauterization device. Plaintiffs provided expert testimony that such actions would constitute a breach of the appropriate standard of care; however, they did not produce evidence in the form of expert opinion that the health center had in fact breached the standard of care. On appeal, plaintiffs essentially maintain that the center's breach was so apparent that such expert testimony was unnecessary and that a directed verdict was therefore improper. We disagree.

The standard of review of motions for a directed verdict is well settled. The trial judge must accord the nonmoving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion must be denied. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975). We conclude that, because plaintiffs failed to present expert opinion

that the center breached the appropriate standard of care and that the breach caused the injury, jury consideration of the center's liability would have been the subject of speculation or conjecture. Under the circumstances, directed verdict for the center was proper. *Starr v Providence Hospital,* 109 Mich App 762, 766; 312 NW2d 152 (1981); *Marchlewicz v Stanton,* 50 Mich App 344, 348; 213 NW2d 317 (1973), lv den 391 Mich 813 (1974).

This Court has recognized that in medical malpractice cases issues of negligence and causation are normally beyond the ken of laymen. *Baldwin v Williams,* 104 Mich App 735, 739; 306 NW2d 314 (1981), lv den 412 Mich 873 (1981). Thus, in an action for malpractice against a hospital, expert testimony is required to establish the applicable standard of conduct, the breach of that standard, and causation. *Starr v Providence Hospital, supra,* p 765; *Ewing v Alexander,* 93 Mich App 179, 187; 285 NW2d 808 (1979). There are two closely connected exceptions to this requirement. Where the negligence claimed is "a matter of common knowledge and observation," no expert testimony is required. *Daniel v McNamara,* 10 Mich App 299, 308; 159 NW2d 339 (1968). And, where the elements of the doctrine of res ipsa loquitur are satisfied, negligence can be inferred. *Neal v Friendship Manor Nursing Home,* 113 Mich App 759; 318 NW2d 594 (1982).

Plaintiffs argue that their proofs at trial were adequate to place their claims against the health center within either or both of the above exceptions. As to the "ordinary negligence" rule of *Daniel,* they posit that the health center's alleged furnishing of a defective electrocauterizer or failure to properly ground the equipment constituted "ordinary negligence" as evidenced by injury to a nontreated body part. In this connection, plaintiffs

cite *Higdon v Carlebach,* 348 Mich 363; 83 NW2d 296 (1957), and *Hand v Park Community Hospital,* 14 Mich App 371; 165 NW2d 673 (1968). See also *Fogel v Sinai Hospital of Detroit,* 2 Mich App 99; 138 NW2d 503 (1965), and *Gold v Sinai Hospital of Detroit, Inc,* 5 Mich App 368; 146 NW2d 723 (1966). The contention is without merit. Unlike the above cases, here Mrs. Thomas' injury was susceptible to a number of explanations, all of which required medical knowledge to discern. Thus, the "ordinary negligence" exception to the requirement of expert testimony does not apply on these facts.

Plaintiffs also rely upon the inference of negligence absent expert testimony which can be founded upon satisfaction of the following four elements: (1) the event is of a kind which does not occur absent negligence; (2) the event is caused by an instrumentality within the exclusive control of the defendant; (3) the event is not due to any voluntary action by the plaintiff; and (4) the explanation is more accessible to the defendant than the plaintiff, citing *Neal v Friendship Manor Nursing Home, supra,* pp 764-765. Although plaintiffs insist that they do not invoke the doctrine of res ipsa loquitur, apparently in recognition that this Court and our Supreme Court have declined to expressly adopt the doctrine in medical malpractice cases, we note that plaintiffs rely upon the precise elements of res ipsa loquitur. See *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117, 124; 139 NW2d 722 (1966).

Assuming without deciding that res ipsa loquitur may be invoked in this case, it is clear that plaintiffs have failed to establish the second element of that doctrine, i.e., that the negligent conduct causing Mrs. Thomas' injury was within the exclusive control of the health center. The

thrust of plaintiffs' evidence established that the defendant physicians were primarily responsible for Thomas' tubal ligation. The health center merely provided the operating facilities and some supportive staff. Thomas was at all times a patient of the physicians of Byron Road Medical Group, not the center. The health center had little, let alone exclusive, control of the actual tubal ligation procedure. Plaintiffs argue that they have satisfied this factor by a showing of concurrent control and that concurrent control, although not yet addressed in Michigan case law, has been recognized by states which apply res ipsa loquitur, citing *Matlick v Long Island Jewish Hospital*, 25 App Div 2d 538; 267 NYS2d 631 (1966). *Matlick*, however, merely held that a directed verdict for the defendant hospital was inappropriate where the defendant anesthesiologist was an employee of the hospital and thus the hospital had concurrent control over the anesthesiologist's actions. It is thus wholly inapposite to the instant case.

Plaintiffs next claim that the trial court's directed verdict in favor of the health center denied them a fair trial in that they then had to prove that full responsibility for Mrs. Thomas' perforated bowel was that of the physicians. The argument is without merit. This Court has concluded that where separate acts of negligence are asserted on the part of a hospital and an independent physician, disposition of one claim does not govern disposition of the other. *Ravenis v Detroit General Hospital*, 63 Mich App 79; 235 NW2d 411 (1975), lv den 395 Mich 824 (1976). See also *Bivens v Detroit Osteopathic Hospital*, 77 Mich App 478; 258 NW2d 527 (1977), rev'd on other grounds 403 Mich 820 (1978); *Richardson v Schlosser*, 54 Mich App 1; 219 NW2d 790 (1974). The trial court in the instant case was thus empowered to grant a directed

verdict on behalf of the health center without the necessity of a similar disposition regarding the remaining defendants. The directed verdict for the center was proper and did not deprive plaintiffs of their theory of liability against the defendant physicians.

Plaintiffs next allege several errors in the admission of the testimony of defendants' expert, Dr. Siegler, a New York obstetrician and gynecologist. First, plaintiffs claim that the entirety of Dr. Siegler's testimony was improper because there was no foundation laid that he was familiar with the standard of care appropriate to the local community. While the applicable standard for general practitioners is that of the local community or similar communities, *Francisco v Parchment Medical Clinic, PC,* 86 Mich App 583, 588; 272 NW2d 736 (1978), modified 407 Mich 325 (1979), the standard of care for a specialist is nationwide. *Naccarato v Grob,* 384 Mich 248, 253-254; 180 NW2d 788 (1970); *Francisco v Parchment Medical Clinic, PC,* 407 Mich 325, 328; 285 NW2d 39 (1979). This Court has repeatedly held that the field of obstetrics and gynecology is a speciality subject with nationwide standards. See, e.g., *Swanek v Hutzel Hospital,* 115 Mich App 254, 257; 320 NW2d 234 (1982), and *McCullough v Hutzel Hospital,* 88 Mich App 235, 241; 276 NW2d 569 (1979). Accordingly, Dr. Siegler's testimony as to the standard of care applicable to the defendant physicians was properly admitted.

Next, plaintiffs argue that certain opinions of Dr. Siegler were inadmissible because they were based upon pathological reports and thus based upon hearsay. MRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may

be those perceived by or made known to him at or before the hearing. The court may require that underlying facts or data essential to an opinion or inference be in evidence.

MRE 705 provides:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Under these rules, an expert witness may testify to an opinion based on hearsay information. *Swanek v Hutzel Hospital, supra,* pp 259-260. The trial court thus did not err in admitting the opinion of Dr. Siegler because it was based upon the pathologist's report.

Plaintiffs further contend that certain of Dr. Siegler's testimony was inadmissible because it was speculative. They point to Siegler's opinion as to the various possible causes of Thomas' perforated bowel and Siegler's opinion as to the lack of evidence of a burn on Thomas' bowel in the pathologist's report. The trial court admitted Siegler's testimony because it found it would be helpful to the jury, particularly in view of the inexactness of the testimony of plaintiff's expert witness.

All relevant evidence is admissible. MRE 402. "Relevant evidence" is evidence having any tendency to make the existence of a fact of consequence more probable or less probable than it would be without the evidence. MRE 401. Nevertheless, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of prejudice or confusion. MRE 403. The relevance and admissibility of evi-

dence is within the sound discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion has been shown. *Jarecki v Ford Motor Co,* 65 Mich App 78, 83; 237 NW2d 191 (1975). Here, no such abuse has been shown. Rather, the trial court's reasoning that Siegler's testimony would be helpful to the jury in determining causation, especially in view of the equally ambiguous testimony of Dr. Gold, is reasonable. We find no error on this ground.

Plaintiffs' final claim is that the trial court erred in refusing to give four requested jury instructions. They cite no authority in support of their position on any of the four requested instructions, however. A party may not leave it to this Court to search for authority to sustain or reject its position. *Butler v Detroit Automobile Inter-Ins Exchange,* 121 Mich App 727, 737; 329 NW2d 781 (1982). Thus, plaintiffs have abandoned this issue on appeal. *In the Matter of Futch,* 144 Mich App 163; 375 NW2d 375 (1984). In any event, our review of the record indicates that the requested instructions were properly refused as they either dealt with matters not properly an issue at trial or they were inapplicable, an incomplete statement of the law, or moot.

Affirmed.