*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD WHITTON and EDDIE WHITTON,
Individually and as Personal Representatives of the
ESTATE OF ROBERT WHITTON, and as Co-
Trustees of the ROBERT E. WHITTON
REVOCABLE TRUST,

        Plaintiffs-Appellants,

v

MCDONALD HOPKINS, MICHAEL WITZKE, and
MICHAEL LATIFF,

        Defendants-Appellees.

UNPUBLISHED
September 30, 2024
2:12 PM

No. 364842
Oakland Circuit Court
LC No. 2021-190885-NM

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Plaintiffs, Richard Whitton (Richard) and Eddie Whitton (Eddie), individually and as personal representatives of the Estate of Robert Whitton (the Estate), and as cotrustees of the Robert E. Whitton Revocable Trust (the Trust),[1] appeal as of right from the trial court's January 23, 2023 order. The trial court granted summary disposition in favor of defendants, McDonald Hopkins, Michael Witzke (Witzke), and Michael Latiff (Latiff), under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiffs also challenge a January 20, 2023 order, which granted partial summary disposition in favor of defendants under MCR 2.116(C)(7) (claim barred by statute of limitations) and (C)(10). We affirm.

## I. BACKGROUND

---

[1] The Trust was originally created on November 6, 1992. It was restated on June 10, 2003; and amended on January 5, 2012, and November 21, 2013. The second-amended trust is the only trust relevant to this appeal. For the sake of brevity, we refer to it as "the Trust."

Richard, Eddie, and Susan Pfankuch are siblings. Their brother, Robert Whitton (Robert), founded TheraMatrix Services, Inc. (TMX), a company that provided physical therapy referral services to unionized employees in the automobile industry. Richard died in July 2015, and he left behind a sizable estate. Before he died, Robert executed the Trust and a last will and testament, in which he nominated Richard and Eddie as copersonal representatives. Most of Robert's assets, including TMX, were held in the Trust. When Robert died, Richard and Eddie became cotrustees of the Trust and co-chief executive officers (CEOs) of TMX. Richard, Eddie and Pfankuch were equal beneficiaries of the Trust.

Shortly after Robert's death, Richard and Eddie signed an engagement letter with Michael Witzke of the law firm McDonald Hopkins. The agreement, which was directed to Richard and Eddie in their capacity as trustees, stated McDonald Hopkins would be acting "as your legal counsel regarding the estate and trust matters of Robert E. Whitton." In September 2015, Witzke advised Richard and Eddie that he would help them with specific matters related to administering the Estate and the Trust. Proceedings were initiated in Oakland County Probate Court (the probate court) concerning the Trust and the Estate.

According to defendants, in the first three years of operating TMX, Richard and Eddie each took more than $1 million in compensation. Richard and Eddie did not seek advice from Witzke or anyone else at McDonald Hopkins on the issue of their compensation from TMX. Instead, Richard and Eddie consulted TMX's longtime accountant, Michael Santicchia of UHY LLP (UHY), to get his opinion on what they could pay themselves. Santicchia also advised Richard and Eddie to take 1% of the value of the Trust as an annual fiduciary fee. Richard and Eddie did so despite warnings from Witzke the fee had to be "reasonable."

In 2016, Richard and Eddie entered into a new contract for providing physical therapy referral services to unionized Chrysler employees. Santicchia advised Richard and Eddie the Chrysler business was not TMX's corporate opportunity because they developed the contact with Chrysler themselves, after Robert died. Santicchia referred Richard and Eddie to attorney Alan Rudzewicz, who was not associated with defendants, to set up their new business. With the help of Rudzewicz, Richard and Eddie incorporated ERW, Inc. (ERW), and made themselves the owners of ERW.

Witzke and Latiff, who also worked for McDonald Hopkins and represented Richard and Eddie in a different matter, learned Richard and Eddie had formed ERW. They advised Richard and Eddie, if ERW was in the same business as TMX, failing to share proceeds with Pfankuch or the Trust would be a breach of Richard's and Eddie's fiduciary duties and could expose them to liability. Santicchia advised Richard and Eddie that Pfankuch was "not involved" in ERW. According to defendants, Richard and Eddie withdrew nearly $4 million in profits from ERW.

In late 2016, or early 2017, Eddie contacted Pfankuch, and offered to buy out her interest in the Trust for $2 million. Pfankuch retained attorney Charles Turnbull, who rejected the proposal on Pfankuch's behalf and requested information from Witzke about the Trust and the Estate. The information was provided. A few months later, Turnbull again reached out to Witzke, this time asking for specific information on distributions and payments to Eddie and Richard. Receiving no response, Pfankuch filed a petition (the Removal Petition) in the Oakland County Probate Court (the probate court). Pfankuch sought the removal of Richard and Eddie as Trustees and the

appointment of an independent trustee. The Removal Petition did not refer to ERW. Latiff sent the Removal Petition to Richard and Eddie, advising them the main reasons Pfankuch was asking they be removed was (1) their attempt to buy Pfankuch out, (2) the compensation they received from TMX, and (3) UHY's failure to respond to requests for financial documents.

On August 5, 2020, and August 6, 2020, the probate court held a hearing on the Removal Petition (the Removal Hearing). At the Removal Hearing, Pfankuch testified she received only $90,000 in distributions from the Trust in the five years since Robert died. This was confirmed by Santicchia, who testified $60,000 of the $90,000 Pfankuch received was to cover her income tax liabilities for phantom income earned by the Trust. Evidence concerning Richard's and Eddie's TMX salaries and fiduciary fees was presented. After hearing the evidence, the probate court removed Richard and Eddie as fiduciaries, concluding "there has been a breach of fiduciary duty" to Pfankuch, as a beneficiary. The probate court appointed Henry Nirenberg as successor trustee. Richard and Eddie fired defendants and retained new counsel. Later, at Nirenberg's request, the probate court reinstated Richard and Eddie as trustees, and it changed Nirenberg's role to that of "Special Fiduciary." Nirenberg was granted authority to control and to manage the Trust assets, including TMX. According to plaintiffs, Nirenberg charged substantial fees to the Trust for his services. Richard, Eddie, and Pfankuch ultimately reached a settlement.

In November 2021, plaintiffs filed suit, alleging defendants' legal malpractice and breach of fiduciary duty on several grounds. Nirenberg, as special fiduciary, authorized the filing of a complaint on behalf of the Trust and the Estate. Defendants answered the complaint and generally denied liability. They also filed a notice of nonparty at fault relating to UHY. Discovery commenced.

Plaintiffs retained attorney Donald Carney as their expert witness, and he was deposed during discovery. Carney opined, once defendants became aware of ERW, they had a duty to independently investigate it to determine whether it was an asset of the Trust. If Richard and Eddie did not permit this investigation, defendants should have withdrawn as counsel. Also, Carney opined Latiff, who was the lead attorney at the Removal Hearing, violated the standard of care by not relying on MCL 700.7817(v), a provision of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., that allows trustees to employ professionals and "to act without independent investigation upon such a person's recommendation[.]" Carney opined Latiff should have argued, in setting Richard's and Eddie's salaries at TMX, they relied on advice from Santicchia and were allowed to "act" on this advice and recommendation. Carney admitted, however, he could not give the opinion that the outcome of the Removal Hearing would have been any different if Latiff relied on MCL 700.7817(v). Carney believed the appointment of Nirenberg created additional unnecessary fees, including those paid for Nirenberg's work in managing the Trust.

In October 2022, defendants moved for partial summary disposition under MCR 2.116(C)(7) (entry of judgment, dismissal of the action, or other relief appropriate) and (C)(8) (failure to state a claim). In relevant part, defendants argued certain claims were time-barred and the Trust and Estate did not have standing because they lacked an attorney-client relationship with defendants. After discovery closed, defendants moved for summary disposition under MCR 2.116(C)(10), arguing plaintiffs could not establish the causation element of legal malpractice in light of Carney's testimony. Defendants also argued dismissal of the fiduciary duty claim was

proper. Plaintiffs opposed the motions. In separate opinions and orders, the trial court granted defendants' motions.[2] This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo "whether a party has standing to bring a claim," *Committee for Marshall—Not the Megasite v Klingler*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369603); slip op at 7; and issues involving the proper interpretation and application of statutes and court rules, *McGregor v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361447); slip op at 2. "Insofar as [a] motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Duato v Mellon*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362823); slip op at 3 (quotation marks and citation omitted). We also review "de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). "A de-novo review means we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

"A motion for summary disposition asserting a real-party-in-interest argument falls under either MCR 2.116(C)(8) or (10), depending on the pleadings and other circumstances of the case." *Estate of Tyler Jacob Maki v Coen*, 318 Mich App 532, 538; 899 NW2d 111 (2017). Because "the [trial] court looked beyond the pleadings" when deciding the motions for summary disposition, we review the motions under the standard of review for a motion under MCR 2.116(C)(10). *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 425; 770 NW2d 105 (2009).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis, quotation marks, and citations omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition. . . ." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Like the trial

---

[2] The trial court granted summary disposition on one of plaintiffs' claims under MCR 2.116(C)(7) after concluding it was time-barred. Plaintiffs do not challenge this ruling on appeal. They also do not argue dismissal of certain legal malpractice claims was improper and concede they are limiting their arguments on appeal. The undisputed claims will not be addressed in this opinion. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.") (Quotation marks and citation omitted.)

court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "While causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court." *Holton v A+ Ins Assocs, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

## III. ANALYSIS

## A. DISMISSAL OF LEGAL MALPRACTICE CLAIM

## 1. STANDING

Plaintiffs first argue the trial court erred by granting summary disposition based on its conclusion the Estate and the Trust were not the real parties in interest and lacked standing to bring a legal malpractice claim against defendants.[3] We disagree.

"The plaintiff in a legal malpractice claim must prove four elements: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022) (quotation marks and citation omitted). "The first element correlates with the duty element of a traditional negligence claim because the existence of the attorney-client relationship gives rise to a duty as a matter of law." *Id*.

> Duty is any obligation the defendant has to the plaintiff to avoid negligent conduct. In negligence actions, the existence of duty is a question of law for the court.
>
> In legal malpractice actions, a duty exists, as a matter of law, if there is an attorney-client relationship. Whenever an attorney or solicitor is retained in a cause, it becomes his implied duty to use and exercise reasonable skill, care, discretion and judgment in the conduct and management thereof. [*Simko v Blake*, 448 Mich 648, 655-656; 532 NW2d 842 (1995) (emphasis, citations, and quotation marks omitted).]

---

[3] We acknowledge plaintiffs also argue summary disposition was improperly granted because the Trust and the Estate were third-party beneficiaries to the contract between Richard, Eddie, and defendants. The argument is unpreserved because plaintiffs failed to raise it in the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). This Court recently held the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-5.

Generally, an attorney can only be held liable for negligence that harms his or her client. *Mieras v DeBona*, 452 Mich 278, 298; 550 NW2d 202 (1996). Additionally,

> [a]n action must be prosecuted in the name of the real party in interest. . . . A real party in interest is one who is vested with the right of action on a given claim, although the beneficial interest may be in another. The rule requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim that is asserted in the complaint. [*Maki*, 318 Mich App at 539 (alterations in original; quotation marks and citations omitted).]

In *Maki*, the family of a child born with a congenital heart defect brought a malpractice action against certain medical care providers. *Id*. at 535. It resulted in a settlement, which provided for an immediate cash payment, as well as regular payments from a structured annuity. *Id*. The child's mother was the child's conservator. *Id*. The child's mother failed to account for the annual funds during the conservatorship, allegedly on the advice of her attorney. *Id*. The child's mother was removed as conservator. *Id*. The child's new conservator sued the mother's attorney and others, alleging the attorneys owed the child a duty of care as their client and they violated that duty in the legal services afforded to the mother during the conservatorship. *Id*. at 536.

The trial court concluded only the child's mother, as the client and conservator at the time of the alleged legal malpractice, had standing to sue the former attorneys and granted summary disposition in favor of the defendants. *Id*. at 536-537. On appeal, this Court rejected the argument that the estate was the real party in interest, either as the actual client or as a third-party beneficiary. *Id*. at 539. Citing MCL 700.5423(2)(z) and MCR 5.117(A), this Court held "an attorney hired to perform legal services for a conservator represents the conservator and does not have an attorney-client relationship with the estate." *Maki*, 318 Mich App at 540. Under MCL 700.5423(2)(z), a conservator may

> Employ an attorney to perform necessary legal services or to advise or assist the conservator in the performance of the conservator's administrative duties, even if the attorney is associated with the conservator, and act without independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment.

The *Maki* Court stated: "The statute clarifies that the attorney performs legal services for the conservator and that the attorney advises or assists the conservator in the performance of his or her duties." *Maki*, 318 Mich App at 541. The "language focuses solely on the services and assistance provided to the *conservator*, which establishes that the attorney represents the conservator in the performance of his or her duties." *Id*. The Court repeated: "[T]he plain language of the statute establishes that an attorney hired by a conservator represents the conservator, and the attorney does not have an attorney-client relationship with the estate. *Id*.

Additionally, MCR 5.117(A) states, "[a]n attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary." The *Maki* Court concluded "[t]he plain language of this court rule is clear that an attorney appearing in the probate court on behalf of a conservator represents the conservator rather than the estate." *Maki*, 318 Mich App at 541. The *Maki* Court

-6-

concluded: "[T]he plain language of the relevant statute and court rule establishes that an attorney employed by the conservator represents the conservator and not the estate." *Id*. at 541-542.

Unlike *Maki*, this case does not involve conservators. However, the logic in *Maki* extends to this case because the language in MCL 700.5423(2)(z) is nearly identical with the language in MCL 700.3715(1)(w), which concerns personal representatives, and MCL 700.7817(1)(w), which concerns trustees. Like MCL 700.5423(2)(z), MCL 700.3715(1)(w) and MCL 700.7817(1)(w) clarify an attorney performs legal services for the personal representative and the trustee and that the attorney advises or assists the personal representative and the trustee in the performance of his or her duties. See *Maki*, 318 Mich App at 541. This language focuses solely on the services and assistance provided to the personal representatives and trustees, which establishes the attorney represents the personal representative and the trustee in the performance of his or her duties. See *id*.

The language in EPIC contrasts with the language of the former the Revised Probate Code (RPC), MCL 700.1 *et seq*., which stated: "Without obtaining a court order, a fiduciary of an estate may employ counsel to perform necessary legal services *in behalf of the estate* and the counsel shall receive reasonable compensation for the legal services." MCL 700.543 (emphasis added). "The plain language of the RPC expressly established that the attorney rendered assistance on behalf of the estate." *Maki*, 318 Mich App at 541. The Legislature removed this language in EPIC and replaced it with language indicating an attorney provides legal services and assistance to the conservator, the personal representative, and the trustee. The plain language of MCL 700.3715(1)(w) and MCL 700.7817(1)(w) establishes an attorney hired by a personal representative or trustee represents the personal representative or trustee, and the attorney does not have an attorney-client relationship with the estate or the trust. See *id*.

Additionally, as noted in *Maki*, 318 Mich App at 541, the Michigan Court Rules provide further clarification on this issue. MCR 5.117(A) states: "An attorney filing an appearance on behalf of a fiduciary shall represent the fiduciary." The plain language of this court rule is clear that an attorney appearing in the probate court on behalf of a fiduciary, such as a trustee or personal representative, represents the fiduciary rather than the estate or the trust. In sum, the plain language of the relevant statutes and MCR 5.117(A) establish an attorney employed by a personal representative or trustee to perform legal services for them represents the personal representative or the trustee—not the estate or trust. See *Maki*, 318 Mich App at 541-542.

Plaintiffs acknowledge the holding in *Maki*, but argue the July 15, 2017 retention agreement, as well as September 14, 2015, and September 18, 2015 letters,[4] establish Richard and

---

[4] We acknowledge defendants' argument on appeal that, in the trial court, plaintiffs relied on the 2015 letters to support defendants performed work for Eddie and Richard in their capacity as fiduciaries. As noted by defendants, "[a] party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted). We disagree plaintiffs are taking a contrary position on appeal. Indeed, in the trial court, plaintiffs maintained defendants represented Eddie, Richard, the Trust,

Eddie hired defendants to perform work on behalf of the Estate and the Trust. Determining whether this argument has merit first requires analyzing the retention agreement. Indeed, "the duty imposed on the attorney for purposes of a legal malpractice action is limited to the agreed-upon scope of representation." *Patel*, 344 Mich App at 276. See also *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger*, 507 Mich 272, 300; 968 NW2d 367 (2021) ("the attorney's scope of authority is defined by what the parties have expressly or impliedly agreed to").

"A fee [or retainer] agreement between an attorney and a client is a contract. Therefore, a fee or retainer agreement . . . is subject to the law of contracts." *Wasenko v Auto Club Group*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361452); slip op at 2-3 (alterations in original; quotation marks and citations omitted). "[A]n attorney and a client are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Id*. at ___; slip op at 3 (quotation marks and citation omitted).

> [T]he main goal in the interpretation of contracts is to honor the intent of the parties. This is done by giving the plain and unambiguous words of a contract their plain and ordinary meaning. The words and phrases of the contract cannot be read in isolation, but must be construed in context and read in light of the contract as a whole. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. [*Allen Park Retirees Ass'n, Inc v City of Allen Park*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357956); slip op at 5 (alteration in original; quotation marks and citations omitted).]

On July 17, 2015, Witzke, Richard, and Eddie signed an engagement letter. The letter was directed to "Mr. Eddie Whitton, Trustee," and "Mr. Richard E. Whitton, Trustee." The letter stated it was regarding: "Estate of Robert E. Whitton (deceased) and Trust[.]" In relevant part, the July 17, 2015 letter stated: "We appreciate the opportunity to act as your legal counsel regarding the estate and trust matters of Robert E. Whitton under the terms set forth in this letter." The letter then went on to explain billing and stated it was the "Entire Agreement."

Although the July 17, 2015 letter stated it was the "Entire Agreement," in a September 14, 2015 letter to Richard and Eddie, Witzke sought to "summarize what [they would] be doing in the 'big picture. . . .' " The September 14, 2015 letter, which indicated it was personal and confidential, had signature lines for Witzke, Richard, and Eddie. Witzke stated, in relevant part:

> We will help you (a) identify all the assets in the estate for estate tax purposes, both probate and non-probate, (b) identify all debts, claims and administration expenses to be paid; (c) prepare a Federal Estate Tax return; (d) prepare all court filings and estate income tax returns; and (e) assist you with the transfer of assets.

---

and the Estate at all relevant times. Although plaintiffs acknowledged defendants represented Eddie and Richard as fiduciaries in the trial court, plaintiffs have always maintained defendants also represented the Trust and the Estate.

The September 14, 2015 letter went on to describe duties defendants would perform on behalf of Richard and Eddie, as cotrustees and copersonal representatives. It also acknowledged Richard and Eddie's "fiduciary capacity. . . ." Although it is not clear if Witzke, Richard, or Eddie signed the letter, we assume for the sake of argument it was received by Eddie and Richard and signed. See *El-Khalil*, 504 Mich at 160 (when considering a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion") (quotation marks and citation omitted).[5] Plaintiffs also rely on a September 18, 2015 letter. Review of the letter further supports Richard and Eddie, as fiduciaries, retained defendants to assist them with administration of the Trust and the Estate.

Because defendants represented only Richard and Eddie in their fiduciary capacities, the Trust and the Estate cannot assert malpractice against defendants. Indeed, they are not real parties in interest. See *Maki*, 318 Mich App at 544-545.[6] Accordingly, the trial court did not err by dismissing the legal malpractice claim asserted against defendants by the Trust and the Estate.

## 2. CAUSATION

Plaintiffs next argue the trial court erred by concluding they failed to establish a question of fact as to proximate cause concerning plaintiffs' legal malpractice claim relating to the Removal Hearing. We disagree.

---

[5] According to defendants, the September 14, 2015 letter was a draft. Defendants note "[t]he draft letter is not signed and is not on McDonald Hopkins letterhead. According to defendants, "[t]here is no evidence that the September 14, 2015 letter was sent by McDonald Hopkins, let alone received and relied on by the Whittons." Defendants do not argue the letter is inherently inadmissible. Rather, it appears their argument relates to a lack of foundation. But plaintiffs did not have to lay the foundation for the admission of the letter in order for the trial court to consider it "on a motion for summary disposition as long as there was a plausible basis for the admission. . . ." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). According to plaintiffs, the September 14, 2015 letter was produced by defendants during discovery and is admissible under MRE 801(d)(2) because it is a party opponent admission reflective of defendants' intent.

[6] We acknowledge plaintiffs rely, in part, on this Court's decision in *Steinway v Bolden*, 185 Mich App 234, 237-238; 460 NW2d 306 (1990), for the proposition, "although the personal representative retains the attorney, the attorney's client is the estate, rather than the personal representative." Although this Court concluded in *Steinway* the attorney represented the estate, this Court relied primarily on a repealed provision of the RPC. *Id*. This Court explained the RPC "authorizes a fiduciary of the estate, such as the personal representative, to employ counsel to perform necessary legal services *in behalf of the estate*." *Id*. at 237 (quotation marks and citation omitted; emphasis added). This Court concluded the RPC allowed a fiduciary to hire an attorney to perform legal services on behalf of the estate, suggesting the estate was the client. See *id*. at 237-238. However, because EPIC did not retain the same language, plaintiffs' reliance on *Steinway* is misplaced. Additionally, "[b]ecause *Steinway* was published before November 1, 1990, it is not binding." *Maki*, 318 Mich App at 542 n 3.

As already stated, "[t]he plaintiff in a legal malpractice claim must prove four elements: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Patel*, 344 Mich App at 272 (quotation marks and citation omitted).

> The second element requires proof that the defendant breached a professional standard of care. Stated generally, an attorney must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances. This Court recently explained that professional malpractice claims ordinarily require expert testimony to establish the applicable standard of care and that the defendant breached that standard. This is because the ordinary layperson is not equipped by common knowledge and experience to judge the skill and competence of the service and determine whether it meets the standard of practice in the community.

> As with any other form of negligence action, the third element requires the plaintiff to prove that the defendant's action was a cause in fact of the claimed injury. To do so, the plaintiff must demonstrate that he or she would have been successful in the underlying matter but for the attorney's malpractice. In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding. [*Id*. at 273 (quotation marks and citations omitted).]

"Often the most troublesome element of a legal malpractice action is proximate cause. . . . As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury." *Pontiac Sch Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 613; 563 NW2d 693 (1997) (alteration, quotation marks, and citations omitted). "[A] jury cannot rely on speculation and conjecture in finding a defendant liable." *Id*. (quotation marks and citation omitted). "Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 614 (quotation marks and citation omitted).

The trial court concluded plaintiffs failed to present evidence to support defendants' alleged legal malpractice, i.e., failing to investigate and properly advise Richard and Eddie about ERW and failing to raise MCL 700.7817(v) as a defense at the Removal Hearing, was a cause in fact of plaintiffs' damages. Plaintiffs' alleged damages resulted because Nirenberg, who incurred fees while working as trustee and special fiduciary, charged fees to the Trust. According to plaintiffs, the fees were substantial.[7]

Turning to the merits of plaintiffs' argument that defendants failed to investigate ERW and properly advise Richard and Eddie, the evidence supports that Witzke and Latiff warned Richard and Eddie they could face scrutiny if it were determined ERW was usurping opportunities from

---

[7] But this begs the question of what were their personal damages; the additional fees would represent damage to the Trust.

TMX. While plaintiffs imply defendants should have provided more detailed and adamant warnings, neither Richard nor Eddie testified they would have behaved any differently or moved ERW to the Trust if defendants advised them to do so. Therefore, a jury would be left to speculate, which is impermissible. See *Pontiac Sch Dist*, 221 Mich App at 613. Even more importantly, plaintiffs acknowledge in their reply brief on appeal that the probate court removed Eddie and Richard as cotrustees because of their TMX salaries, TMX distributions, and trustee fees. Indeed, plaintiffs acknowledge the probate court was unaware of ERW when it removed Eddie and Richard as trustees. In sum, plaintiffs failed to establish a genuine issue of material fact that, but for defendants' failure to investigate ERW and advise Eddie and Richard appropriately, Richard and Eddie more likely than not would not have been removed as cotrustees.

With respect to plaintiffs' argument that defendants were negligent by failing to raise a defense under MCL 700.7817(v) at the Removal Hearing, Carney opined Latiff violated the standard of care by not citing MCL 700.7817(v). Carney admitted, however, he could not give the opinion that the outcome of the Removal Hearing would have been any different if Latiff relied on MCL 700.7817(v). Plaintiffs argue, however, expert testimony is not necessary to establish causation.[8]

> Expert testimony may be admitted if it will be useful in understanding the evidence or to "determine a fact in issue." MRE 702. In a malpractice action, expert testimony is usually required to establish a standard of conduct, breach of that standard of conduct, and causation. *Thomas v McPherson Community Health Ctr*, 155 Mich App 700, 705; 400 NW2d 629 (1986). Where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony. [*Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 48; 436 NW2d 70 (1989).[9]]

Plaintiffs allege, but for Latiff's failure to raise MCL 700.7817(v) as a defense at the Removal Hearing, Eddie and Richard more likely than not would not have been removed as cotrustees. This issue is not within an ordinary layperson's knowledge. Indeed, whether an attorney should raise a certain defense is a decision that is based in law and is often a matter of trial strategy. See e.g., *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Analyzing this issue requires understanding how a defense operates within a legal proceeding. As noted by Carney during his deposition, a defense is different than immunity. It also requires understanding

---

[8] While plaintiff did not specifically argue before the trial court that expert testimony was unnecessary to establish causation, as noted by plaintiffs, "appellate consideration is not precluded merely because a party makes a more developed or sophisticated argument on appeal." *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 587; 918 NW2d 545 (2018).

[9] "Although cases decided before November 1, 1990 are not binding precedent, they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).

the role of a trustee and determining whether the defense applies to the facts of this case, which are fairly complicated.

Moreover, plaintiffs need to show failure to raise the defense was a proximate cause of their damages, i.e., the Trust incurring fees because Richard and Eddie were removed as cotrustees and replaced with Nirenberg. This requires explaining (1) a probate court has statutory authority to remove a trustee, and (2) when a probate court can remove a trustee under MCL 700.7706(2). This is a complex explanation, requiring statutory interpretation. The probate court considered "the statutory guidelines, as well as the terms of the trust," before removing Richard and Eddie as cotrustees. It appears the probate court removed them because there was a breach of trust, i.e., Richard and Eddie violated a duty they owed to Pfankuch. See MCL 700.7901(1) ("A violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust."). This would need to be explained to the jury because an ordinary layperson cannot be expected to have such knowledge or understanding of legal principles. Next, after considering this ruling, the jury would need to determine whether presenting a defense under MCL 700.7817(v) would have altered the ruling. This would require considering the relevant law and the facts of the case. An ordinary layperson could not be expected to have such knowledge or skill. Because expert testimony is necessary, plaintiffs' argument fails. Summary disposition was properly granted.

## B. DISMISSAL OF THE BREACH OF FIDUCIARY DUTY CLAIM

Plaintiffs argue summary disposition on the breach of fiduciary duty claim was erroneous because questions of fact remained. We disagree.

Plaintiffs argue defendants' "failure to raise the statutory defense at the hearing went beyond malpractice."[10] Rather, it was a breach of a fiduciary duty defendants owed plaintiffs. According to plaintiffs, defendants acted in their own interests at the Removal Hearing by failing to raise the defense because doing so would likely have caused the probate court to question the advice, or lack of advice, given to plaintiffs by defendants. As noted by plaintiffs, "[a] fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency." *Meyer & Anna Prentis Family Foundation Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 49; 698 NW2d 900 (2005). There is no evidence in the record Latiff "act[ed] for himself" at the Removal Hearing by deciding not to raise the defense because it would place him or his law license in jeopardy. A genuine issue of material fact did not exist, and summary disposition on the breach of fiduciary duty claim was proper.

---

[10] We acknowledge defendants' argument that plaintiffs' "failure to raise" argument is abandoned because plaintiffs failed to present it in a statement of questions presented as required by MCR 7.212(C)(5). See also *Hunt v Drielick*, 298 Mich App 548, 554 n 3; 828 NW2d 441 (2012), rev'd on other grounds 496 Mich 366 (2014). Ordinarily, to be considered, an issue must be in the statement of questions presented. See *id*. See also *Mich Educ Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008). We nonetheless address the argument for purposes of completeness.

## IV. CONCLUSION

The trial court did not err by granting summary disposition in favor of defendants. Given this holding, we need not consider the remainder of plaintiffs' arguments on appeal because they are moot. "As a general rule, this Court does not decide moot issues." *Mich Republican Party v Donahue*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364048); slip op at 3 (quotation marks and citation omitted).

Affirmed. Defendants may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney